OSCAR FELIX v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WALLACE.

No. 11,551. (62 Pac. 667.)

CONSTITUTIONAL LAW — *Gopher-scalp Act.* A board of county commissioners, acting under an unconstitutional law, offered bounties for gopher scalps, and issued a large number of county warrants to persons in payment therefor. Afterward the legislature passed a retrospective law legalizing the warrants issued for said purpose, and declared them to be county charges and payable out of the general fund of the county. The force of the healing act was operative on the warrants only. *Held,* that the curative act was void, being an encroachment of legislative upon judicial power.

Error from Saline district court; R. F. THOMPSON, judge. Opinion filed November 10, 1900. Affirmed.

### STATEMENT.

IN July, 1893, a petition was presented to the board of county commissioners of Wallace county, requesting them to make an order placing a bounty of one dollar each on the scalps of wolves and coyotes, and five cents each on the scalps of rabbits and gophers.

The order was made as prayed for, with a provision that the county clerk should issue a receipt for the scalps, which receipt should be negotiable at any of the stores for ninety cents on the dollar. The citizens, realizing that the rewards offered would stimulate the people to kill large numbers of the animals named, and believing that the liability thus incurred would, if paid from the fund raised by the levy for current expenses, interfere with the successful administration of county affairs for a time, presented a petition to the board, at a meeting held later, in July, asking that a special election be called to authorize a special levy to raise funds to pay said bounties. The prayer of the petitioners was granted, and an election was held August 10, 1893, at which the following proposition was submitted to the voters of Wallace county :

"Shall the county commissioners be authorized to make an additional levy of ten mills, over and above what they are authorized by law to levy for county purposes, to meet the extra expense incurred by the bounties placed on wolf, coyote, gopher and rabbit scalps?"

A majority of the votes were cast in favor of the proposition, and the board ordered the additional levy of ten mills extended on the tax-roll.

Chapter 90 of the Laws of 1889 (Gen. Stat. 1897, ch. 27, §§ 173-176 ; Gen. Stat. 1899, §§ 1790-1793) was then in force, authorizing a bounty to be paid by counties upon wolf, coyote, wild-cat, fox and rabbit scalps. There was also, in the Laws of 1871, an act entitled "An act to protect fruit-trees, hedge plants, and fences," being chapter 87, which authorized the county commissioners of any county to pay a bounty on gopher scalps taken in the county, not to exceed twenty cents for each scalp. In 1895, at the suit of

53—62 KAN.

the receivers of the Union Pacific Railway Company against the commissioners of Wallace county, to enjoin the tax levied to pay such bounties, the law of 1871 above mentioned was held unconstitutional and void, for the reason that the subject of the act was not clearly expressed in its title, and that, the commissioners having included in their order an offer of bounty on gopher scalps without lawful authority so to do, the whole tax was void. (*Clark v. Comm'rs of Wallace Co.*, 54 Kan. 634, 39 Pac. 225.) Soon after this decision was made the legislature passed an act, as follows:

"An act legalizing the action of the board of county commissioners of Wallace county in issuing certificates and county warrants for scalps of gophers, rabbits, wolves, and coyotes, directing warrants to be issued to the holders and owners of said certificates, declaring the same to be county charges, and directing and authorizing the warrants already issued and to be issued on such outstanding certificates shall be payable out of the general fund of the county, and repealing all laws and parts of laws, so far as the same may be inconsistent with or repugnant to the provisions of this act.

"*Be it enacted by the Legislature of the State of Kansas:*

"Section 1. Whereas, under the provisions of an act entitled 'An act to protect fruit-trees, hedge plants, and fences,' the board of county commissioners of Wallace county offered a bounty for gopher scalps, and in pursuance of said action of said board a number of gophers were killed and certificates given by the county clerk pursuant to said act, and upon some of which certificates and warrants have been passing from hand to hand; and whereas, under the provisions of an act entitled 'An act authorizing a bounty upon wolf, coyote, wild-cat, fox and rabbit scalps, and to repeal chapter 73, Laws 1885, and all other laws in conflict herewith,' the board of county commissioners

of Wallace county offered a bounty for the scalps of animals enumerated in said act, and in pursuance of said action a number of said animals were killed and county warrants issued for, and which warrants have been passing from hand to hand : it is hereby declared the duty of said board to issue county warrants for the amount of such certificates now issued and outstanding, and all said warrants so issued and herein authorized to be issued be and the same are hereby legalized and hereby made county charges, and shall be and are made payable out of the general fund of the county.' '' (Laws 1895, ch. 358.)

In September, 1896, the plaintiff, Oscar Felix, brought this action in the district court of Wallace county against the board of county commissioners of that county to recover the sum of $3650.25 upon receipts for scalps and warrants either issued or assigned to him. The venue was changed to Saline county, where the action was tried. The district court held against the plaintiff below so far as his claim was based upon the bounty offered for gopher scalps, and also denied him judgment upon such receipts and warrants as were issued for rabbit and gopher scalps which failed to show the separate number of each. From such determination he has come to this court by proceedings in error.

*Bond & Osborn, Benson & Smart,* and *Garver & Larimer,* for plaintiff in error.

*B. G. Hurlburt,* county attorney, *A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for defendants in error.

The opinion of the court was delivered by

Smith, J. : Does chapter 358 of the Laws of 1895, set out in the statement, have the curative effect of validating the unwarranted acts of the board of county

commissioners of Wallace county in issuing warrants in evidence of public indebtedness for bounties offered for gopher scalps, make them valid obligations, and fix the amount of the same as a charge upon the county? This is the question now before us.

When the county commissioners made the order offering a bounty on gopher scalps they based their authority so to do on an unconstitutional law. An act of the legislature wholly void can confer no right, power, or authority. (Cooley, Const. Lim. 222.) Whatever labor was done or services performed for the county in the matter of killing gophers, pursuant to the reward offered which was authorized in the body of said law, could not be recovered for upon the ground that the county received a benefit for which it justly ought to pay, for the reason that there was a total lack of capacity in the board of commissioners to incur an obligation of the kind mentioned. (*Hovey v. Comm'rs of Wyandotte Co.*, 56 Kan. 577, 44 Pac. 17.) The plaintiff in error, as a holder of the warrants in suit, cannot recover thereon unless the curative law of 1895 supplies, by its retroactive operation, that power which the commissioners lacked in the first instance, and unless the provisions of the healing act cover matters within the range of legislative prerogative.

Retrospective legislation has been held to be valid to the extent of imposing a legal liability upon the people owning property in a portion of a township or other subdivision of the territory of the state, where no such liability existed before, in cases where a pre-existing moral obligation rested upon them to discharge such liability. (*Craft v. Lofinck, Treas.*, 34 Kan. 365, 8 Pac. 399.) It is unnecessary, however, to discuss the question of moral obligation in this case,

for, if such obligation in fact existed between the county and the holders of these warrants, it would in no manner affect our opinion regarding the invalidity of the act in question. It concludes:

"It is hereby declared the duty of said board to issue county warrants for the amount of such certificates now issued and outstanding, and all said warrants so issued and herein authorized to be issued be and the same are hereby legalized and hereby made county charges, and shall be and are made payable out of the general fund of the county."

It will be noticed that the legalizing force of this law is applied to the warrants already issued and those to be issued after its passage. The assumed authority of the commissioners in making the written obligations is not validated, but the warrants themselves are made binding county charges, payable out of the general fund. The vitalizing power of the act operates on the warrants only. The effect which necessarily follows from this legislative decree is to convert *prima facie* evidence of debt into incontestible obligations upon the maker, from the payment of which there can be no escape. It is, in short, a judgment rendered by legislative act against the county, and its collection provided for by fixing the amount thereof as a county charge. A *charge* is defined as an "obligation directly bearing upon the individual thing or person to be affected, and binding him or it to the discharge of the duty or satisfaction of the claim imposed." (Bouvier.)

No matter what may have been the defect or failure in the consideration of these warrants or the extent of the imposition or fraud which might have been practiced in obtaining them, all inquiry into that subject by the courts has been predetermined by this curative

act, and the arbitrary will of the legislature inter-
posed, by which defenses are cut off and a liability
declared, without trial by the usual methods or pro-
ceedings had by resorting to due process of the law.

Let us assume that at the time the act of 1895 went
into effect this plaintiff had brought an action to re-
cover from the county the amount of the warrants he
then owned, and that the defendant had answered, at-
tacking the consideration of the written instruments
sued on. Must the court in which the action was
pending, upon reading this law, in obedience solely to
a legislative command, summarily enter judgment
against the county, without hearing or trial? Such
determination would be abhorrent to all sense of jus-
tice, and destructive of the vested right which every
person has, when sued, to defend against the enforce-
ment of an unjust claim. The legislature cannot be
allowed to thrust its arbitrary declarations into such
adversary proceedings and decide which party should
prevail. It is without power to substitute its judg-
ment in a disputed matter for that of a court engaged
in the work of administering justice by orderly meth-
ods, after discovering the truth by hearing evidence
on both sides admitted according to legal rules. It is
not, however, the interference with pending litigation
that constitutes the sole evil of such legislation, but it
is the divesting of legal defenses upon which a party
has a right to rely as security against a successful at-
tack in court by the assertion there of an unjust de-
mand against him. The merits of an existing defense
which may be pleaded in resistance against an asserted
liability can be affected only by judicial, and not by
legislative, action.

Counsel for plaintiff in error have cited cases which
instance the almost plenary power that has been exer-

cised by the legislature, with the approval of this court, in the regulation and control of counties. Among them is *The State, ex rel., v. Comm'rs of Shawnee Co.*, 28 Kan. 431, 434, from which the following language in the opinion is quoted :

"In short, as a general proposition, all the powers and duties of a county are subject to legislative control ; and, provided the purpose be a public one and a special benefit to the county, it may direct the appropriation of the county funds therefor in such manner and to such amount as it shall deem best."

Under the rule thus stated, the legislature is powerless to charge upon a county the payment of a demand based upon services which have not been performed, for material which has never been delivered, or for money borrowed when no loan has been made. And county warrants issued in such cases cannot be validated by legislative act, for no special benefit has accrued to the county or public purpose been subserved.

There is no provision in the act under consideration which implies that the county commissioners are left any discretion. It is made their duty to issue warrants on all certificates outstanding, without inquiry into their validity as public obligations, and at the same time the law declares them to be a charge upon the county, and payable out of the general fund. Ordinarily, the fact that warrants or certificates have been issued by the board does not prevent the county from contesting a suit brought to recover the amount thereof for want of consideration. (*Commissioners of Leavenworth v. Keller*, 6 Kan. 510.)

We will not extend this opinion by quoting from decisions upholding the position we have taken concerning the force and effect of such laws, but cite the following as cases in point upon the question : *Denny v.*

*Mattoon and others,* 2 Allen, 361 ; *Commissioners of Shawnee County v. Carter,* 2 Kan. 115 ; *Forster v. Forster,* 129 Mass. 559 ; *Richards v. Rote,* 68 Pa. St. 248 ; *The C. C. & I. C. R. W. Co. v. The Board of Comm'rs of Grant Co. et al.,* 65 Ind. 427 ; *Lane et al. v. Dorman et ux.,* 3 Scammon (Ill.) 238 ; *Davis, Appellant, v. Minor and wife,* 1 Howard (Miss.) 183 ; *Milan County v. Bateman,* 54 Tex. 153 ; *Allison, &c., v. Louisville, Harrod's Creek & Westport Railway Co.,* 72 Ky. (9 Bush) 247 ; *Lindsay v. United States Savings & Loan Ass'n,* 120 Ala. 156, 24 So. 171 ; *In re Handley's Estate,* 15 Utah, 212, 49 Pac. 829 ; *Resier versus The William Tell Saving Fund Association,* 39 Pa. St. 157 ; *City of Wellington v. Wellington Township,* 46 Kan. 213, 26 Pac. 415.

In a chapter devoted to a discussion of powers exercised by the legislative department, Judge Cooley, in his work on Constitutional Limitations, after commenting on legislation of this kind, at page 125, concludes :

"In these cases there are necessarily adverse parties ; the questions that would arise are essentially judicial, and over them the courts possess jurisdiction at the common law ; and it is presumable that legislative acts of this character must have been adopted carelessly, and without a due consideration of the proper boundaries which mark the separation of legistive from judicial duties. As well might the legislature proceed to declare that one man is indebted to another in a sum specified, and establish by enactment a conclusive demand against him."

The judgment of the court below will be affirmed.