THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. S. SIMONSON AND E. E. SIMONSON, *as Partners,*
*etc.*

**No. 12,346.** (68 Pac. 653.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Bills of Lading Conclusive Evidence—Act Un-
constitutional.* The provision of chapter 100 of the Laws of 1893
(Gen. Stat. 1901, §§ 5938–5947) which makes the specification of
weights in bills of lading issued by railroad companies for hay,
grain, etc., shipped over their lines, conclusive evidence of the
correctness of such weights, is unconstitutional because denying
to the companies due process of law, and because wrongfully de-
priving the courts of the judicial power to determine the weight
and sufficiency of evidence.

2. ——— *Act a Police Regulation—Attorney's Fee.* The stat-
ute cited is a measure in exercise of the police power of the state,
and does not assume to regulate commerce between the states.
It is not, therefore, repugnant to the commerce clause of the
federal constitution, and, being a police regulation, the provision
contained in it allowing an attorney's fee for the successful prose-
cution of a case within its terms is constitutional.

3. ——— *Evidence Improperly Rejected.* When the issue is
whether a railroad company has delivered to the consignee all the
goods it received from the consignor, it is error to reject evidence
tending to show that the car in which the goods were shipped
was sealed at the loading point and remained under seal until de-
livery of the goods to the consignee.

Error from Labette district court; A. H. SKIDMORE,
judge. Opinion filed April 5, 1902. *In banc.* Re-
versed.

*T. N. Sedgwick,* for plaintiff in error.
*Kimball & Osgood,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action against the
Missouri, Kansas & Texas Railway Company to re-
cover for a shortage of hay shipped over its line.

Judgment went against it, to reverse which it has prosecuted error to this court.

The action was brought under chapter 100 of the Laws of 1893 (Gen. Stat. 1901, §§ 5938–5947). The statute requires railroad companies to provide track scales for weighing car-load lots of hay, grain, etc., and to issue duplicate bills of lading for the shipment. It makes the companies responsible for the full amount of such shipment, less one-fourth of one per cent. of its weight, and it concludes its sixth section (Gen. Stat. 1901, § 5943) with the following provisions:

"And in any action hereafter brought against any railway company, for or on account of any failure or neglect to deliver any such grain, seed or hay to the consignee, or his heirs or assigns, either duplicate of such bill of lading shall be conclusive proof of the amount of such grain, seed or hay so received by such railway company."

In defense to the action, the railway company offered a deposition which tended to prove that the full amount of hay receipted for in the bills of lading had not been in fact received by it. This deposition was rejected, and its rejection constitutes the principal claim of error. A majority of the court are of the opinion that it was wrongly rejected so far as the question now to be noticed is concerned, and we are all of the opinion that it was wrongly rejected so far as another question presently to be noticed is concerned. The argument against its admission is based on the statutory provision above quoted which makes the bill of lading, in the cases stated, conclusive evidence of the amount received.

Is it in the power of the legislature thus to create a conclusive presumption in a matter of private con-

tract? We are constrained to believe that it is not. Every suitor is entitled to his day in court and to have his case determined on such evidence as legal policy will allow. It is doubtless competent for the legislature to prescribe many of the rules of evidence. The subjects of the competency of witnesses, the order of trial, the burden of proof, the effect of public records, the certification of copies of official documents, the *prima facie* character of certain evidence, and other like matters which pertain to the *practice* rather than the *right* of proving causes are lawfully within the sphere of legislative regulation ; but it is not within the power of the legislature to exclude from the courts that which proves the truth of a case, nor, on the other hand, to compel them to receive that which is false in character.

A bill of lading contains two parts—one a receipt for the goods, the other a contract for their carriage. As to the latter, it, as other written engagements, may not be contradicted by parol, but as to the former it stands on the same footing as other kinds of receipts —it may be shown to be incorrect. It may be shown to have been written by mistake or induced by fraud. (Hutch. Carr. [2d ed.], § 122.) From time immemorial the mutual mistake of both parties to an instrument or the fraud of one of them have been admitted as valid defenses to actions. The allowance of such defense is a part of the substantive justice of all actions on contracts. It inheres in the very right of such cases, and it cannot be denied by the legislature under the guise of a rule of evidence.

In Cooley on Constitutional Limitations, 5th ed., 453, it is said :

"But there are fixed bounds to the power of the legislature over this subject which cannot be exceeded.

As to what shall be evidence, and which party shall assume the burden of proof in civil cases, its authority is practically unrestricted, so long as its regulations are impartial and uniform ; but it has no power to establish rules which, under pretence of regulating the presentation of evidence, go so far as altogether to preclude a party from exhibiting his rights.   Except in those cases which fall within the familiar doctrine of estoppel at the common law, or other cases resting upon the like reasons, it would not, we apprehend, be in the power of the legislature to declare that a particular item of evidence should preclude a party from establishing his rights in opposition to it.   In judicial investigations the law of the land requires an opportunity for a trial ; and there can be no trial if only one party is suffered to produce his proofs.   The most formal conveyance may be a fraud or a forgery ; public officers may connive with rogues to rob the citizen of his property ; witnesses may testify or officers certify falsely, and records may be collusively manufactured for dishonest purposes ; and that legislation which would preclude the fraud or wrong being shown, and deprive the party wronged of all remedy, has no justification in the principles of natural justice or of constitutional law.''

In Arkansas a statute was enacted which, according to a certain theory of construction, imposed upon railroad companies an absolute liability to pay for stock killed by their trains, and withdrew from the jury all considerations of negligence of the owner of the stock or due care on the part of the company.   The court held that such theory of construction could not be applied, notwithstanding the language of the act lent some countenance to it, for the reason following :

''It is not within the province of the legislature to divest rights by prescribing to the courts what should be conclusive evidence.   .   .   .   'The legislature may declare what shall be received as evidence, but it cannot make that conclusively true which may be

shown to be false; at all events, if such facts are necessary to show that the substantial rights of property are to be affected, and he is made to lose his property.'" (*L. R. & F. S. R. R. Co. v. Payne*, 33 Ark. 816, 34 Am. Rep. 55.)

In Minnesota a statute was enacted which made the fact that a person who performed labor or furnished material in the erection of a house on another's land conclusive evidence that the labor was performed or the material furnished with the owner's consent, unless the latter had, by suit in the courts, enjoined the act as a trespass.    Of this act the court said :

"A man cannot be thus deprived of his property without his consent.    The legislature may doubtless establish rules of evidence ; but to enact a law making evidence conclusive which is not so necessarily in and of itself, and thus preclude a party from showing the truth, would be nothing short of confiscation of property and a destruction of vested rights without due process of law." (*Meyer v. Berlandi*, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663.)

An act of congress in 1862, in relation to enlistments in the military service of the United States, provided that "the oath of enlistment taken by the recruit shall be conclusive as to his age." In an action of *habeas corpus* brought by the parent or guardian of a minor recruit, it was held that the statute was not binding on the petitioner as establishing a conclusive presumption of age, for the reason that the declaration as to age was a "judicial act," a matter for judicial inquiry, from entering on which the courts could not be precluded. (*Wantlan v. White*, 19 Ind. 470.)

The legislature of Minnesota enacted a statute providing that the schedule of rates for the transportation of property over the railroads of that state, made and published by the board of railroad and warehouse

commissioners, should be final and conclusive as to what were equal and reasonable charges. The supreme court of the United States held the act void. (*Chicago &c. Railway Co. v. Minnesota*, 134 U. S. 418, 10 Sup. Ct. 702, 33 L. Ed. 970.)

A statute of this state assuming to authorize counties to pay bounties for the killing of gophers was held unconstitutional for the reason that the subject had not been expressed in its title. Later, a statute was enacted, probably intended to be curative of the authority exercised under the former one, but which was so worded as to validate the mere ministerial act of issuing the warrants in payment of the bounty only, and not the original authority to issue them. The warrants so issued were declared "hereby legalized, and hereby made county charges and payable out of the general fund of the county." This so-called curative act was held to be in the nature of a legislative judgment against the county in favor of the holders of the warrants, an endeavor to preclude investigation into the rightfulness of their issuance, and, therefore, an usurpation of the judicial function to try and determine causes, and consequently void. (*Felix v. Wallace County*, 62 Kan. 832, 62 Pac. 667.)

The theory on which all these cases proceed is that an act of the legislature which undertakes to make a particular fact or matter in evidence involving the substantive right of the case conclusive upon the parties, and which precludes inquiry into the meritorious issues of the controversy, is an invasion of the judicial province and a denial of due process of law. The legislature may regulate the form and the manner of use of the instruments of evidence—the *media* of proof—but it cannot preclude a party wholly from making his proof. A statute which declares what

shall be taken as conclusive evidence of a fact is one which, of course, precludes investigation into the fact, and itself determines the matter in advance of all judicial inquiry. If such statutes can be upheld there is then little use for courts, and small room indeed for the exercise of their functions.

It will be observed that the statute in question by it terms shuts out all proof as to the occurrence of fraud or mistake in the making of the bill of lading. Admitting, however, that of necessity there must be read into the act an exception against fraud, why should there not be an exception in favor of mistake as well, for if the bill of lading was executed by the mutual mistake of both parties, it does not evidence the contract of either one? In order to constitute a contract, the minds of the parties thereto must have met. If by reason of mutual mistake no such concurrence has been had, it follows that no contract has been entered into, notwithstanding the fact that written evidence of one may have been executed. Therefore, to give effect to the act in question, we must say that the legislature has the power to force contracts upon parties by making indisputable that which in reality is only evidence of their contract. It is hard to see where this would end were its entrance admitted. Of course, the contracts of parties are binding on them. It does not require an act of the legislature to make them so. It is the function of the court and not of the legislature to determine when contracts exist and what they are. To shut out proof that what purports to be a contract is not really such, by reason of mutual mistake of the parties thereto, is in effect to require the performance of an act which was never agreed on between them; or, in other words, it is to

allow the legislature to make for parties a contract which they never made for themselves.

It is claimed that this sort of legislation is defensible and proper under the law of estoppel, and that, where the parties have entered into the seeming contract, they may be prohibited by the terms of their act from denying its effect as written. The trouble, however, lies in the application of the rule of estoppel and in the assumption that the bill of lading speaks the contract of the parties. Whether it does is the very question at issue, the very question on which the plaintiff in error sought to offer evidence. If the writing was not the expression of the contract of the parties to it by reason of mutual mistake or fraud, then how could either be estopped by it? Estoppel is only predicated of contracts which parties have really made. We do not intend to rule that there are no classes of acts or contracts that may not be made conclusive upon the parties thereto by the legislature, but we do intend to hold that it is incompetent for the legislature to make that conclusive of the fact and character of a contract which does not in reality express a contract because of fraud or mistake that may inhere therein.

There was error, also, for another reason, in rejecting the deposition. The evidence offered was to the effect that the cars in which the hay was shipped were sealed at the loading point, and that the seals were found unbroken at the point of destination. Had this evidence been admitted, it would have tended to prove that whatever hay the company received it safely transported, and, inasmuch as the plaintiff claimed that the company received the amount receipted for in the bills of lading, the evidence tended to prove that the same amount was transported and

delivered. For this reason the deposition should have been admitted, and, therefore, its rejection was error.

The claim is made that the statute heretofore discussed is in violation of the interstate-commerce clause of the federal constitution. This claim is untenable. It does not regulate rates, levy taxes or impose restrictions of any kind on commerce between the states. It is a police regulation designed to promote accuracy in dealings between shippers and carriers, by compelling the latter to furnish facilities for ascertaining the weight of products offered for shipment.

A statute in Texas imposed a penalty on railroad companies for refusing to deliver freight on demand of the consignee and tender of the charges. It was contended that, as to shipments originating in other states, the act was a regulation of interstate commerce and could not have effect. The contention was overruled. (*G. C. & S. F. Rly. Co. v. Dwyer*, 75 Tex. 572, 12 S. W. 1001, 7 L. R. A. 478, 16 Am. St. Rep. 926.)

A statute of Iowa required railroad companies to post their schedules of transportation rates in their station-houses, and affixed penalties to the non-performance of the duty. The act, although applying to interstate as well as local rates, was held not to be a regulation of interstate commerce. (*Railroad Co. v. Fuller*, 17 Wall. 560, 21 L. Ed. 710.) The principle on which these cases rest, that such enactments were police regulations, likewise underlies the statute in question.

The statute allows an attorney's fee for the successful prosecution of a case under its provisions. The reason for this is the negligence of the carrier in failing safely to transport and deliver the goods committed to its charge. The case in that respect comes fully within the principle of *Railroad Co. v. Matthews,*

58 Kan. 447, 49 Pac. 602, affirmed by the supreme court of the United States in 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909. See, also, *Assurance Co. v. Bradford,* 60 Kan. 82, 55 Pac. 335.

For error in rejecting the deposition for the reasons above given, the judgment of the court below is reversed and a new trial is ordered.

JOHNSTON, CUNNINGHAM, GREENE, POLLOCK, JJ., concurring.

SMITH, ELLIS, JJ., dissenting from the first paragraph of the syllabus and corresponding portion of the opinion.

DOSTER, C. J. (dissenting) : I dissent from the judgment of the majority of the court, that the legislature may not give to the receipt contained in a bill of lading issued by a common carrier a conclusive effect as evidence of the weight of the thing receipted for, and am authorized to say that Justices SMITH and ELLIS likewise dissent. A proposition in denial of the legislative power in the case stated is incomprehensible to me. There is not a case in the books which, in principle or in similarity of facts, affords ground for the majority opinion.

The instances in which the exercise of the power in question has been atttempted are not numerous. Nearly all of them were cases in which the legislature sought to give tax deeds a conclusive effect to establish the substantive rightfulness of tax-sale proceedings. This class of cases was not adverted to by the majority because of the obvious fact that in them the act from which it was sought to derive a conclusive effect was clearly that of an adversary party, and the effort was to find those in which the legislature had exceeded its authority by undertaking to found a pre-

sumption of conclusiveness upon the act of the party himself. This could not be done. There are no such cases; that is, there are no cases in denial of the legislative right to found an estoppel upon the *contract act* of a party, and that—and it alone—is the case in hand.

There are, however, decisions of a different character which my associates have mistakenly regarded as authority for their holding. For instance, in one of them, as cited in the majority opinion, it appeared that the legislature had declared a conclusive presumption of negligence from the killing of live stock. (*L. R. & F. S. R. R. Co. v. Payne*, 33 Ark. 816, 34 Am. Rep. 55.) In another it declared a conclusive presumption of assent to a trespass from a failure to apply to the courts to enjoin it. (*Meyer v. Berlandi*, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663.) In another it declared an officially published schedule of railway rates conclusive evidence of their reasonableness. (*Chicago &c. Railway Co. v. Minnesota*, 134 U. S. 418, 10 Sup. Ct. 702, 33 L. Ed. 970.) In another it sought to make a minor's declaration as to his age conclusive on his legal guardians. (*Wantlan v. White*, 19 Ind. 470.) It must be observed that, in the cases of the tax deeds and the schedule of railway rates and the minor's enlistment oath, the legislature sought to bind interested parties by the adversary action of others, not by any action of their own; and, in the cases of the imputed negligence and the imputed assent to the trespass, sought to bind them by accidental circumstances involving them in no manner of contractual relation. Manifestly, all such cases are to be governed by a principle different from that to be applied when it is sought to found the presumption on the conventional act or agreement of

the party himself. I may well object to a law which from the hostile act of another seeks to·raise against me a conclusive presumption, and I may well object to a law which seeks to found an estoppel against me upon some undesigned and easily explicable circumstance ; but I can have no objection to a law which merely seeks to give to my own deliberate business engagement a conclusive and irrevocable effect.

Judge Cooley notes the distinction between the two classes of cases in the very quotation made from him in the majority opinion. In discussing the subject of the power of the legislature over the rules of evidence he says :

"Except in those cases which fall within the familiar doctrine of estoppel at the common law, or other cases resting upon the like reasons, it would not, we apprehend, be in the power of the legislature to declare that a particular item of evidence should preclude a party from establishing his rights in opposition to it."

The legislature, therefore, in this case, has rested its enactment on the very exception noted by Judge Cooley—estoppel or like reasons.

The general doctrine upon which the exceptional class of cases rests was stated in another form by this court in the case of *County Seat of Linn Co.*, 15 Kan. 500. A question in that case was as to the conclusiveness as evidence of the number of votes cast at a county-seat election to prove the total number of electors in the county. The constitution, article 9, section 1, declares that "no county-seat shall be changed without the consent of a majority of the electors of the county." The statute regulating county-seat elections enacted that the place receiving the majority of the votes cast at the election should become the county-

seat. In view of the fact that the total of the votes
cast at a county-seat election might not be equal to
the whole number of electors of the county, the ques-
tion as to what should be regarded as controlling evi-
dence of the total number arose. It was held that
the act providing for the change of county-seats on a
majority of the votes cast at the election declared a
conclusive presumption as to the total electorate, and
was a competent exercise of legislative power. The
court said;

"While a legislature may not by the mere ma-
chinery of rules of evidence override and set at naught
the restrictions of the constitution, or arbitrarily make
conclusive evidence of a fact anything which in the
nature of things has no connection with that fact nor
reasonably tends to prove it, yet it may make that
which, according to the ordinary rules of human ex-
perience, reasonably tends to prove a fact, conclusive
evidence of it."

The case of *Felix v. Wallace County*, 62 Kan. 832, 62
Pac. 667, is more nearly in support of the majority
decision than any other case to be found. There is,
however, a radical difference between that case and
this one. In that case the legislature undertook to
validate a particular specified class of instruments,
contract in form, but which were wholly without
binding force or legal existence. It undertook by leg-
islative fiat to create a debt altogether and entirely
out of that which possessed the mere semblance of a
contract, but which lacked all the elements of an obli-
gation. The act under discussion in this case un-
dertook no such legally impossible thing; it did not
undertake to create a debt; it did not undertake to make
a contract between the parties; it only declared that
the contract which they themselves had made should

be conclusively presumed to express the obligation into which they had entered.

So far as decisions are concerned, the only one sufficiently close in point of fact to bear directly on the question is opposed to the theory of limitation on the legislative power in the special class of cases mentioned. It declares, I think, the correct principle, and is entirely applicable to the present controversy. It is *Orient Insurance Company v. Daggs*, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552. A statute of Missouri declared :

"In all suits brought upon policies of insurance against loss or damage by fire, hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured was worth at the time of the issuance of the policy the full amount insured therein on said property ; and in case of total loss of the property insured, the measure of damages shall be the amount for which the same was insured, etc."

This provision, it will be observed, is the ordinary "valued-policy law" of this and other states. In the case cited, the objections to the statute were the same as those urged against the one now under consideration. The court stated them as follows :

"The specific objections which, it is claimed, bring the statute within the prohibition of the constitution, in the last analysis, may be reduced to the following : That the statute takes away a fundamental right and precludes a judicial inquiry of liability on policies of fire insurance by a conclusive presumption of fact."

Replying to this, the court, among other things, said :

"It (the statute) makes no contract for the parties. In this it permits absolute freedom. It leaves them to fix the valuation of the property upon such prudence and inquiry as they choose. It only ascribes

estoppel after this is done—estoppel, it must be observed, to the acts of the parties, and only to their acts in open and honest dealing. Its presumptions cannot be urged against fraud. . . . The cases cited by plaintiff in error which hold that the legislature may give the effect of *prima facie* proof to certain acts, but not conclusive proof, do not apply. They were not of contract nor gave effect to contracts. It is one thing to give effect to the convention of parties, entered into under the admonition of the law, and another thing to give to circumstances, maybe accidental, conclusive presumption and proof to establish and force a result against property or liberty."

The above decision was rendered on error to the supreme court of Missouri, which had made a similar holding (*Daggs v. Ins. Co.*, 136 Mo. 382, 38 S. W. 85, 58 Am. St. Rep. 638, 35 L. R. A. 227), and I think it well declares and elucidates the proposition that it is within the power of the legislature to give to the written declaration of a party, made as a basis for mutual engagement between himself and another, a conclusive and irrevocable character.

An objection to the statute is the generality of its terms. It does not state any exception, and it is said that fraud and mistake constitute necessary exceptions, which it is beyond the power of the legislature to exclude. This objection does not seem to me to possess weight. As to fraud, I think it may be said that statutes, however general their language, are never to be so construed or enforced as to deny relief to any one who, without fault on his part, has been entrapped into a seeming submission to their terms.

"When statutes are made, there are some things which are exempted and foreprized out of the provisions thereof, by the law of reason, though not expressly mentioned; thus, things for necessities' sake,

or to prevent a failure of justice, are excepted out of statutes.   (Dwarris, rule 5, page 123.)''

To the same effect, and with citation to instances, is Endlich on Interpretation of Statutes, section 258. In *Orient Insurance Co. v. Daggs*, supra, it was expressly held that a conclusive presumption of fact, declared by statute, as in this case, could not be enforced as against a claim of fraud.

As to mistake, the legislature has done no more than the courts themselves have done in like cases without the aid of statutes — declared a rule of estoppel by deed.   It is true, the courts have not elevated a mere receipt to the grade of an estoppel, but they have often held other like written engagements and declarations of the existence of facts to be such.   This has been especially true when one of the contracting parties has done or paid something as a consideration or equivalent for the engagement or declaration.   This case, for aught we know, may be one falling within the rule, because here the shipper may have paid freight money on the basis of weight specified in the bill of lading.   But admitting, as should be done, that the courts have not advanced the doctrine of estoppel to cover such class of cases, ought it to be said that the legislature is constitutionally powerless to do so — that is, powerless to make that conclusive evidence which the courts themselves hold to be presumptive evidence — powerless for the sole reason that some instances of meritorious defense on the ground of mistake will be shut out?

If we were required to search for reasons for the enactment in question we would not have to go far. The reason is to be found in the character of railways as common carriers.   The relations existing between the public and the carriers make the regulation of the

latter in many particulars not merely advisable but highly important. It cannot be said, therefore, that a statute forbidding the carrier to dispute in court a written admission made by it as a basis of contract liability is an unwarranted exercise of legislative power. It must be borne in mind that the business of a common carrier is one which is "clothed with a public interest." That was pithily remarked by Sir Mathew Hale nearly 400 years ago. It was quoted by the supreme court of the United States in *Munn v. Illinois*, 94 U. S. 113, 24 L. Ed. 77, and made the basis of the decision in that case and in many subsequent ones decided by that and other courts.

Now, pretermitting the question as to the power of the legislature to found a conclusive presumption upon the admissions of private individuals, it cannot be doubted, in my judgment, that it possesses the power to declare that a receipt for goods, given by a transportation company in the conduct of its public business as a common carrier, shall be conclusively deemed and held to express the measure of the liability incurred. In denying that the legislature possesses such power I think my associates have grievously erred.