MATHER et al. v. MacLAUGHLIN, Collector of Internal Revenue.

No. 16440.

District Court, E. D. Pennsylvania.

March 10, 12, 1932.

John Hemphill, of Philadelphia, Pa., for plaintiff.

Edward W. Wells, U. S. Atty., of Philadelphia, Pa., for defendant.

Sur Motion and Reasons for a New Trial.

DICKINSON, District Judge.

This rule must be made absolute. We think this case was properly tried and submitted to the jury except in the respect that we inadvertently so submitted it as to perhaps convey to the jury the impression that the act of Congress in declaring that the fact that a gift was made within two years of death should be "deemed and held" to have been one made "in contemplation of death" meant that the one fact was merely prima facie evidence of the other. Revenue Act 1926, § 302 (c), 26 USCA § 1094 (c). This, although an inadvertent error, was none the less an error. A gift within two years of death is much more than mere prima facie evidence that it was made in contemplation of death. It means that the ultimate fact must be found unless the proofs to the contrary are clear and indubitable so that the mind of the fact trier rests fully satisfied with the truth of the finding. We have no doubt that the proofs were thus satisfying to the minds of the jury, but this rule must be made absolute because the jury were not adequately instructed upon this feature of the case.

The rule for a new trial is made absolute, and the verdict of the jury is set aside.

Trial Hearing on Pleadings and Proofs.

A jury trial has been waived in this cause. The real issue is the lawfulness of a tax levy, and the real question whether certain real estate formed, for taxing purposes, part of the estate of plaintiff's decedent. It did not, in fact, form any part of his estate because he had conveyed it to his several children by formal deed. The grantor, however, died within two years of this conveyance and hence the claim for taxes. The defense is fourfold:

1. A portion of the real estate in question had been made the subject of a parol gift more than twenty-one years before the conveyance by deed. Following this parol gift the donee had taken and remained in the exclusive and undisputed possession as owner for more than the statutory period, so that he had under the law of Pennsylvania a good title against all the world by what is known as adverse possession.

2. Like parol gifts had been made and like possession taken by the donees of other portions of real estate, but the possession was not for such length of time as to confer title by adverse possession. The donees, after the gift, however, and after entering into possession, have made valuable improvements upon their respective properties so that each had under the law of Pennsylvania a good equitable title notwithstanding the statute of frauds.

3. All the properties in question were the subjects of parol gifts made by the donor more than two years before his death.

4. The conveyances made of the lands, although within two years of the grantor's death, were not made "in contemplation of death."

Special fact findings have been made and will be incorporated with this opinion so as to dispose of all of the issues of fact raised; but in the view we have taken of the defense designated as 4, there is no need to discuss the others. This has to do wholly with the act of 1926. The situation with which the act dealt was that those possessed of large estates anticipated distribution at death by so contriving it that a large part of what, in fact, belonged to the decedent, would not be so reckoned for tax purposes. Congress has manifested a settled resolve to defeat all such contrivances. The first device was the creation of a trust by which the beneficiaries, in the event of the death of the creator, were

made the owners of the subject of the trust, but he during his lifetime held not merely the usufruct but the full dominion and control over it. When the subjects of these revocable trusts were included in the taxable estate of decedent, then resort was had to a form of conveyance in trust by which the interests of the beneficiaries were made vested interests, but the creator, none the less, retained all the incidents of ownership except that of control over the succession at his death. When this form of tax evasion was frustrated, absolute grants of property were made which were in intent and effect substitutes for a testamentary disposition or other succession at death. The promptings for such grants (when they did not have the conscious purpose of tax evasion) were anticipations of the distribution of estates at death. It was then enacted that all grants made within two years, and which were made "in contemplation" of death, should not lessen the taxable estate of a decedent. This made the collection of the tax dependent upon the fact of whether it had been made "in contemplation of death." Congress was not yet done with its pursuit of the elusive taxpayer and has followed him with the Act of February 26, 1926, with which this case has to do. The pertinent provisions of the act are as follows:

Section 302:

"The taxable value of the assets of the estate shall include all properties. * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer ' * * in contemplation of or intended to take effect in possession or enjoyment at or after his death * * * where * * * the decedent has made a transfer of transfers * * * of any of his property * * * not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death * * * such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

We have been asked to find that this act is unconstitutional. This we decline to do.

One reason for the refusal we state with diffidence, because in entertaining it we are out of accord with those who think the position to be untenable because illogical. The position taken is that the question of the constitutionality of an act of Congress is best left to the appellate courts and that a trial court should not annul an act unless it is in conflict with some plain mandate of the Constitution. This is not a rule of law but of judicial policy. We are further not in accord with the arguments urged upon us supporting the unconstitutionality of this act. Congress was legislating upon the subject of taxation—a subject of legislation expressly committed to and emphatically belonging to it and to it alone. The only respect in which this act is exposed to attack on constitutional grounds, as we view it, is that hereafter dealt with in discussing the construction to be given to the act. Moreover, the question of the constitutionality of a legislative enactment cannot arise or seldom does arise until the meaning of the enactment has been first found.

What does the act of 1926 mean? All understand the general motive and purpose of it. It is to frustrate all attempts to evade the payment of taxes assessable against decedents' estates, and particularly attempts to deplete such estates by transfers to those who, at the decedent's death, would be the distributees or among the distributees of his estate. There are in the act three thoughts. The first is to include in the taxable assets of decedents' estates all transfers (other than bona fide sales) made by the decedent in his lifetime "in contemplation of death." Respecting this there is no room for difference of opinion. Whether the transfer was made "in contemplation of death" is a fact to be found. The second thought concerns transfers made within two years of death respecting which it is enacted that they shall "be deemed and held to have been made in contemplation of death," and the third is that in all transfers made before the act the question is again one of fact to be found.

Our concern here is with the second thought dealing with transfers made within two years of death. The position of the taxing authorities is that the act means:

1. All transfers (other than sales).

2. Or if not this, then that all transfers are to be taken for taxing purposes to have been made "in contemplation of death," no matter what the truth may be.

The two positions in effect are one and

the same. Respecting the first the question obtrudes itself, if Congress meant all transfers made within the two years (except sales); why was this not said? The only answer in sight is that Congress did not mean this, because this would deny to the owner of property the right to make a gift of it, and this Congress did not wish to do. As has already been said, the two meanings advanced come in effect to be the same and call for the like answer. The tax collector construes the quoted provisions of the act to be a command laid by Congress upon the courts to find (irrespective of what the truth may be) that every transfer is one made "in contemplation of death" if made within the two years before. This brings up the only constitutional question which the case presents. There is no room for doubt that the framers of the Constitution accepted and followed the tripartite division of governmental powers advocated by a famous publicist. Following this the legislative, the executive, and the judicial powers are treated of in separate articles. There is likewise no doubt that the purpose of this was to make each independent of the other in the sense that no one was to encroach upon the proper domain of either of the others. No such intent can be ascribed to any of them. We are in view of this unable to find in the act of 1926 that Congress meant to commit to the courts to find whether a transfer was made "in contemplation of death" and to accompany the commitment with a command to them of what they are to find. No court can act judicially unless left free to act. What then is the meaning of the act?

Congress had imposed a tax dependent upon a fact finding to be made. The finding is to be made by the courts, but it is within the province of Congress to regulate the burden of proof. This is what Congress has done and all which it meant to do. It may be objected that this leaves the meaning of Congress to turn upon a very indefinite phrase. So, undoubtedly, it does, but the meaning is no more indefinite than that conveyed by the phrase "in contemplation of death." The truth is that both belong to a type of ideas which have the peculiarity that when expressed broadly and in the abstract the meaning is clear enough, but difficulties arise as soon as they come to be given a concrete application. A cloud resting on a hilltop has its limits clearly defined. To one climbing the hill the same cloud begins nowhere and ends nowhere. So it is with such phrases as "in contemplation of death," "burden of proof," "presumptions of fact," and the like. Qualifying words and phrases creep in and are resorted to in the vain effort to convey a meaning which cannot be expressed in words. Equity defines the strength of the evidence which will justify a court in reforming a written paper. It must be "clear, precise and indubitable," and have the support of two witnesses or their equivalent. The criminal law demands that proof of guilt shall be "beyond all reasonable doubt." Every branch of legal science has some phrase which it has thus appropriated to itself. Every member of the profession thinks he knows what these phrases mean, but any attempt to tell us the meaning ends in failure. After expressing the opinion that a thing cannot be done, we do not mean to essay to do it. The phrases likewise in common use such as "prima facie" "preponderance or weight of evidence," do not convey the meaning of Congress in the phrases used in this act. The nearest analogue, of which we know, to the thought expressed by Congress, is supplied by what is required in patent cases when one sets up prior use or prior invention as a defense to the charge of infringement of an issued patent. It all comes to this, that the judicial mind rests in a settled, satisfying conviction of the truth of something. This we find to be the meaning of the phrase "deemed and held." Every transfer within the two-year period is to be taken as made "in contemplation of death," but this is not an irrefutable fact.

It is an accepted canon of construction that when one meaning, given to a legislative enactment, raises grave constitutional or other objections which another reading avoids, the latter may be adopted as the true reading. We thus conclude that the provision that a transfer made within two years of the death of the grantor shall be deemed and taken to have been made in contemplation of death does not lay any command upon the courts to so hold, but does impose upon the estate of the decedent the burden of showing otherwise and does regulate the weight of that burden. The phrase "in contemplation of death" is, as we have said, a phrase which is not definite when applied to a particular transfer. Certainly a transfer made for the purpose of reducing the taxes payable by the estate would be within it. So, likewise, would be a transfer which was meant to be an anticipation and substitute for a testamentary gift. When, however, the transfer made had no reference to the death of the donor and was made with no thought of it in mind other

than that death would prevent the transfer from being made, the phrase "in contemplation of death" would exclude such a transfer. We will venture upon an analogue, although aware that it may raise as many questions as the case in hand. We take a case from the records of the court. The owner of a property had made a testamentary devise of it to a church official in trust for a charitable use. Under the law, the gift was avoided if death occurred within thirty days of the execution of the will. The testator died within the thirty days. He had provided against such a happening, however, by a devise in such event of the same property absolutely to the same individual to whom it has been before devised in trust for charitable uses. The devisee treated the property as one held in trust, and when he gave up his official position he conveyed the property to his successor. He died within two years thereafter. If the act of 1926 had then been in force, would the property so conveyed have been included in the measurement of the tax which the grantor's estate would have been called upon to pay? If so, his entire estate would not have sufficed to pay the tax.

In the instant case there is no doubt that the transfers in question were in no sense de mortuis. They were marriage portion gifts to several of his children and a gift to an unmarried daughter partly because of the gifts to the others and partly because of the service she had been to her father. They were all made long before the two-year period. The subject of the gifts were real estate and no deeds of conveyance had been made. It is not difficult to understand this omission. The fond mother often gives money to her child but puts it in bank or locks it up for safekeeping so the child cannot spend it. It is none the less a gift. To many parents, most in fact, sons and daughters are children long after they have grown up. The fact that deeds were not executed to the donees when the gifts were made does not change the other fact that the gifts were made. They were intended, as we have said, for marriage portions and for the homes of the young married couples and were occupied by them as such and known as belonging to them. The only real title that the father retained was the naked legal title. This fact gives significance to another phrase in this act. The subject of a gift is made part of the assets of the estate for tax assessment purposes only "to the extent of the decedent's interest therein." The grantor here had no interest beyond the paper title. We have a settled, satisfying conviction that the conveyances of 1926 and 1927 were not made "in contemplation of death," but solely to confirm the parol gifts long before made and to make marketable the titles to the premises described in these respective deeds. This finding we make as a fact finding. The conclusions of law which follow it are obvious. The properties in question are no part of the taxable estate of the decedent, nor should they be included in what measures the tax payable by the estate, and the plaintiff should have judgment. We have reached these conclusions with the cited cases in mind, among which are the following: Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224; White v. Hall (C. C. A.) 53 F.(2d) 210; Guinzburg v. Anderson (D. C.) 51 F.(2d) 592; Delaware Trust Co. v. Handy (D. C.) 51 F.(2d) 867; United States v. Klein, 80 U. S. (13 Wall.) 128, 20 L. Ed. 519; Missouri, K. & T. R. Co. v. Simonson, 64 Kan. 812, 68 P. 653, 57 L. R. A. 765, 91 Am. St. Rep. 248; Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819.