No. 35,409

THE STATE OF KANSAS, ex rel. JOSEPH H. McDOWELL, County Attornew of Wyandotte County, *Plaintiff*, v. FRANK HOLCOMB, FRANK BROWN and ROY WHEAT, as The Board of County Commissioners of the County of Wyandotte, *Defendants*.

(117 P. 2d 591)

Opinion filed October 11, 1941.

*Joseph H. McDowell,* county attorney, *Harold H. Harding* and *Thomas E. Joyce,* assistant county attorneys, for the plaintiff.

*George H. West,* county counselor, and *Conrad Miller,* assistant county counselor, for the defendants.

*J. S. Parker,* attorney general, *Eldon S. Wallingford,* assistant attorney general, *S. M. Terbovich, N. E. Snyder* and *R. H. Glandon,* all of Kansas City, as *amici curiae.*

The opinion of the court was delivered by

SMITH, J.: This is an original action in quo warranto wherein the state, on the relation of the county attorney of Wyandotte county, asks that the county commissioners of Wyandotte county be ousted from exercising the power conferred upon them by chapter 375 of the Laws of 1941 to direct the county attorney of Wyandotte county to proceed to foreclose delinquent tax liens on real estate bid in by the county for taxes. The facts are agreed upon and the case has been submitted to us on what amounts to a motion for judgment for the plaintiff on the pleadings.

The petition set out the official character of the parties and that the defendants had by resolution ordered the county attorney to immediately institute an action in the district court in the name of the board of county commissioners foreclosing the tax lien on real estate bid in by the county as against all parties having or claiming to have any interest in any of this real estate at any previous sale and which remained unredeemed for a period of four years from the date of its first sale for delinquent taxes, as provided in section 14 of chapter 375 of the Laws of 1941. The petition alleged further that the board of county commissioners did not have the authority to order the county attorney to take this action and asked that they be ousted from exercising such authority.

The defendants answered that they had made this resolution pursuant to the provisions of chapter 375 of the Laws of 1941. They alleged that they desired their authority to make this resolution to be passed upon by the court before the county incurred the expenses of preparing the lawsuit.

The plaintiff in its reply pleaded certain reasons why it contended that chapter 375 was unconstitutional and invalid. The matter set out in this reply stated questions of law only. These will be noticed in the order in which they are pleaded.

Chapter 375 of the Laws of 1941 was one of several proposed legislative measures intended to be a revision of the entire body of the law with reference to taxation. The entire code was not enacted, but chapter 375 has to do with the sale of real property for delinquent taxes and many procedural matters in connection therewith.

Amongst the other provisions of chapter 375 was one repealing G. S. 1935, 79-2411. This was the section which gave the county commissioners the authority to compromise taxes which had not been paid upon real estate.

Section 16 of chapter 375 provides in general that where real estate has been bid in by the county for taxes and has remained unredeemed for a period of three years after such sale it is the duty of the board of county commissioners to order the county attorney to bring action to foreclose.

The county commissioners in this case have made the resolution directing the county attorney to proceed pursuant to that section. There are many hundreds of pieces of real estate upon which taxes have not been paid in Wyandotte county. The preparation of such an action will entail a great deal of work. A question was raised as to the validity of chapter 375. On that account this action was commenced in order that the question of the validity of the act might be adjudicated before this expense was incurred.

The first argument of the plaintiff is that chapter 375 is contrary to article 2, section 16 of the constitution of Kansas. That is the section which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title . . ." The state argues that this chapter contains more than one subject, that is, that it deals with taxation, rental and lease of real estate, assessments of real estate and the purchase of real estate for county purposes. The title of the act is "An act relating to taxation. . . ." The title then sets out the various sections of the General Statutes that are amended and repealed by the act.

As a matter of fact, the general subject with which the chapter deals is the sale of real estate for taxation. The real life of the chapter is contained in section 16, which provides for actions to enforce liens for unredeemed real estate taxes. The other sections have to do largely with procedural details leading up to the bringing of the action to foreclose the liens and with details as to the sale of the real estate after the action has been brought and judgment had.

We dealt with this general question in *City of Wichita v. Sedg-*

*wick County,* 110 Kan. 471, 204 Pac. 693. In that case the court considered the title to an act, the title of which read as follows: "An act relating to cities of the first class." Then followed some material as to the acts that were repealed and amended. The act itself conferred upon the mayor and council of cities the right to take steps necessary to prevent the spreading of smallpox or other contagious diseases. The act further dealt with the powers and duties of cities of the first class in general. When action was brought to enforce part of the statute with reference to contagious diseases the validity of the act was attacked because it was not within the scope of the title. This court held that all of the details of the relationship of cities did not need to be detailed in the title to the act, and said:

"Look at the general act of 1876 relating to public education (ch. 122). Its title is, 'An act for the regulation and support of common schools.' Under this simple title there lies the entire statutory foundation of our public-school system, covering not only such matters as schools and school districts, and school officers and their duties, but matters so distantly related thereto as the disposition of the federal land grants for school purposes, and including such details as the mode of settlement and acquisition of school lands, duties of the state auditor and governor in relation to the issue of land patents, criminal proceedings and penalties for waste or trespass on school-land properties, etc. But though the title to this act gives no hint of these far-reaching details, yet because they are mere details of the general scheme of the act for the effective regulation and support of common schools, and are germane and pertinent to the principal purpose of the act, they are not subject to constitutional infirmity under section 16 of article 2."

The title of the act we are considering and the act itself do not go as far as the act referred to by the court above. We hold that the title to this act is broad enough to cover all of the provisions that are contained therein.

The plaintiff next argues that chapter 375 is invalid because it provides for a rate of assessment and taxation that is not uniform and equal and thus violates article 11, section 1 of the constitution. This section provides that the "legislature shall provide for a uniform and equal rate of assessment and taxation."

Plaintiff points out that prior to the taking effect of chapter 375 owners of real estate upon which taxes were delinquent for a period of four years had a right of appeal to the board of county commissioners for a compromise, under G. S. 1935, 79-2411. They point out that this section is repealed by chapter 375 and hence provides

that the people whose taxes were delinquent and who had not sought a compromise were discriminated against when chapter 375 became effective. Owners of real estate whose taxes were delinquent when chapter 375 took effect had no vested right in the privilege of asking a compromise from the county commissioners. In fact, the county commissioners were not obliged to compromise. The statute only provided that county commissioners might compromise them if in their judgment it was for the best interest of the county to do so. The matter with which we are dealing is not one of rate of assessment; it is one of procedure when taxes are not paid. It is the provision which the legislature in its wisdom thought would result in getting property back on the tax rolls when the taxes had not been paid. The county commissioners had no right to compromise taxes unless such right was conferred by the legislature. There is no rule much better established than the one to the effect that any right which the legislature confers it may take away.

The plaintiff next points out that section 25 of chapter 375 confers on the county assessor the duty of assessing property that has been bid in for the county at a tax sale, and that section 26 delegates to the board of county commissioners the duty of assessing the property and determining its market value without regard to assessment made by the county assessors. The plaintiff argues that these two sections are conflicting and ambiguous and on that account the act is invalid.

Plaintiff does not point out just what section of the constitution would be violated by this, but presumably it is relying on the rule that acts must be so clear and unambiguous that their meaning can be ascertained.

We find no conflict between sections 25 and 26 of chapter 375. Section 25 provides that upon the completion of the sale of real estate in the foreclosure action brought pursuant to section 16 the county commissioners in counties where there is a county assessor, and the county clerk in counties where he is an ex officio county assessor, shall appraise every piece of real estate bid in by the sheriff, if the county had any such sale. It should be noted here that section 20 provides that in the event the highest bid does not equal the amount of the entire lien the sheriff may at the direction of the board of county commissioners bid it in in the name of the county.

The provision of section 25, to which reference has been made, is undoubtedly to save the county commissioners themselves the work

of personally appraising every piece of land. It is done so that the county commissioners will have some basis upon which to negotiate for the sale of real estate by them pursuant to the provisions of section 26. Section 26 provides that the county commissioners shall sell the real estate acquired by the county pursuant to section 20 at a private or public sale, the consideration of the purchase to be at least the original amount of the tax lien and costs, with six percent interest, and all subsequent taxes and special assessments that were not included in the foreclosure action. The act then provides that at the end of six months from the time the county acquired title, if the real estate remains unsold, the county commissioners may reduce the price therefor to a sum that in their judgment would be the market value thereof, and may sell it at such reduced price. There is no conflict between these two sections. This provision of section 26 means that the county commissioners do not need to hold this land in the name of the county indefinitely, but may sell it for what in their judgment it is worth. There is no question of appraisal involved in the provision of section 26. It is simply a matter of the exercise of the best judgment of the commission.

Plaintiff next points out that section 29 of chapter 375 provides that foreclosure actions begun prior to September 1, 1941, shall be completed in conformity with the law in effect prior to that date.

Plaintiff next points out that all of the laws providing for foreclosure of tax liens were repealed by chapter 375.

Plaintiff argues that the result of the above provision is to make chapter 375 retrospective, and hence unconstitutional.

Plaintiff relies on the case of *Watkins v. Inge,* 24 Kan. 612. It is a little difficult to see how this authority supports the contention of plaintiff here. In that case the validity of a tax deed was attacked. This deed had been issued pursuant to section 115 of the General Statutes of 1868. In 1876 a new statute relating to assessment and taxation was adopted which repealed the act of 1868. The new act provided as follows:

" 'All matters relative to the sale and conveyance of lands for taxes under any prior statute shall be fully completed according to the laws under which they originated, the same as if such laws remained in force.' " (p. 614.)

Counsel for plaintiff suggested that the above provision made the entire act retrospective. This court stated:

". . . This is not true. This statute is an attempt to preserve, or rather protect, the inchoate rights of purchasers at tax sales under prior statutes, and so modifies the effect of the repeal of the act of 1868 as to make the act of

1876 applicable to future sales. It is a saving act, and cannot be said to impair the obligation of any contract, or take away any vested right of property, and is not violative of any constitutional provision or any principle of justice." (p. 615.)

In this case it is clear that all the legislature attempted to do by the provision we are considering was to provide that lawsuits pending at the time of chapter 375 taking effect should be carried on under the law in effect when they were commenced. There is nothing retrospective about this and it contravenes no provision of the constitution.

Plaintiff argues that the legislature failed to provide that the repealed law should remain in force pending lawsuits being completed. The statute itself provides that a foreclosure commenced before the act takes effect should be completed in conformity with the laws in effect prior to that date. This is just a different way of stating the provision approved by this court in *Watkins v. Inge,* supra. (G. S. 1935, 79-2908.)

Furthermore, G. S. 1935, 77-201, provides the following rule for statutory construction:

"*First.* The repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed. The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment."

The above disposes of this argument of plaintiff.

Plaintiff next points out that section 27 of chapter 375 provides that should the county decide to use real estate bid in for county purposes the county is required to pay to every taxing unit its proportion of the delinquent taxes. It points out that in order for the county to raise funds for this purpose it would be required to make a levy therefor and that this would result in one taxing unit taxing another and would be a violation of section 1 of article 11 of the constitution. This section provides, in part, as follows:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes . . . shall be exempted from taxation."

The argument of the plaintiff is that the provision we are considering would result in the county being taxed for the benefit of the other taxing units which had a share in the taxes delinquent on the particular piece of real estate.

Plaintiff misconstrues the purpose of the provision of section 27 which provides for the county taking land on which the tax lien has been foreclosed for county purposes. The effect of the provision is that if the county needs the land the county commissioners may acquire it for county purposes, and in that event must pay the amount of the tax lien just as any purchaser must. The only difference between the county and any other purchaser is that in the event the county takes the land the county commissioners cannot deal with themselves for the benefit of the county in fixing the price, but must pay the full amount of the tax lien less the amount of the taxes due the county. The amount paid the other taxing units is a consideration for the taking, nothing more.

Plaintiff next points out that section 35 of chapter 375 expressly repeals G. S. 1935, 79-2402. That section gave minors and persons under legal disability the privilege of redeeming land which had been sold for taxes after the legal disability had been removed. Plaintiff argues that the effect of this repeal is to deprive these people of their property without due process of law in violation of the 14th amendment to the federal constitution.

Section 16 of chapter 375 provides that the action shall be brought against ". . . the owners or supposed owners of such real estate, and all persons having or claiming to have any interest therein or thereto." The section further provides that "thereupon summons shall issue and shall be personally served, or publication made as provided in other cases under the code of civil procedure." Under these provisions the minors and those under legal disability will be given their day in court.

There is no provision in the constitution to the effect that a minor or one under legal disability must be enabled to redeem his property from sale after the disability is removed. The remedy conferred by G. S. 1935, 79-2402, was a privilege which the legislature saw fit to extend to certain people. No constitutional provision was violated when this was taken away by the legislature.

Plaintiff next points out that section 16 provides for the foreclosure of tax liens of all persons having or claiming any interest in real estate that is unredeemed for a period of three years from a delinquent tax sale. In this connection plaintiff points out that section 20 of chapter 375 provides that at the sale in the foreclosure action the sheriff shall execute a deed and that the deed shall vest in the purchaser named a fee simple title to the real estate. Plain-

tiff argues this would include holders of special tax bills issued pursuant to G. S. 1939 Supp. 13-1079, and that any such foreclosure of these tax bills would violate the 14th amendment to the constitution of the United States. This argument requires an examination of G. S. 1939 Supp. 13-1079.

This section and other sections of the General Statutes of 1935 provide for the issuance of tax bills in cities of over 120,000 population. The act applies only to Kansas City. The section provides that under certain circumstances, with which we are not here concerned, the governing body of the city may provide for the cost of special improvement by special tax bills against the property charged therewith; that these bills shall be payable in not to exceed ten annual installments and shall bear interest not to exceed eight percent; that they shall describe the property and improvements for which they are issued and to whom issued, the total amount of special assessments against the property, and the number of installments in which the bill is payable, and that the governing body has levied this amount against the property and shall each year thereafter at the time for levying and certifying taxes cause to be certified each installment provided for. The statute then provides as follows:

"Said special tax bills when so issued shall be a lien upon the property described therein for the amount of the said special assessment and interest thereon until paid, which lien shall be superior to all other liens excepting the lien for general taxes, and shall be concurrent with such general tax lien; but no liability of whatever character on account of said tax bills shall attach to or be a claim against the city therefor, except that it shall be the duty of the governing body of the city to levy by ordinance the total amount of said tax bills against the property charged therewith, and cause each installment of such tax bills in its order, with interest on the unpaid portion thereof to August 1 of the following year, to be duly certified by the city clerk to the county clerk, to be placed on the tax roll for collection as other taxes for the benefit of the legal holder of such special tax bills as hereinafter provided for."

Plaintiff points out that this statute provides that the lien of these tax bills shall be superior to all other liens except the lien for general taxes, and shall be concurrent with such general lien, and argues that should the lien for general taxes be foreclosed in the manner provided for in section 16 of chapter 375, and there should be no bidders at the foreclosure sale, the concurrent lien provided for, as set out above, would be barred by the foreclosure action and sale, and this would result in a violation of article 1 of section 10 of the

constitution of the United States, which forbids the states from impairing obligations of contracts. This argument presupposes that the court in which the foreclosure action was begun will give an unconstitutional construction to the statute. The presumption is to the contrary.

In *State, ex rel., v. Board of Education,* 137 Kan. 451, 21 P. 2d 295, this court passed on the validity of the cash-basis law. The argument was made that the statute required one holding a claim against a municipality to take bonds instead of cash in payment and on that account violated a contract obligation and was invalid. This court said:

"The presumption is the legislature intended to pass a valid act, and if there is a reasonable way to construe it so that it is valid instead of invalid, that construction will be given it by the court." (p. 453.)

This is a well-established rule of constitutional construction.

The statute requires that all persons having or claiming to have an interest in the real estate shall be made parties defendant in the foreclosure action. Certainly holders of tax bills come within the meaning of that language. Weight is given this argument by the further provision that the county attorney may join as many parties defendant as there are parties interested in the real estate. Having provided that they should be made parties defendant, it is fair to · assume that the legislature intended that the court in which the action was instituted should proceed to adjudicate the claim of the tax-bill holders which had been made parties. There is no provision in chapter 375 expressly repealing or amending G. S. 1939 Supp. 13-1079. Had the legislature intended that the lien provided by the provisions of that statute should no longer be concurrent with the lien for general taxes it would have so provided in chapter 375.

It is true that section 19 of chapter 375 provides, in part, that the trial court shall in its judgment charge the amount of the taxes as a first and prior lien upon the real estate. This language does not mean that the court should charge this as a lien prior to another lien which the legislature had declared to be a lien concurrent with that for general taxes. The section also provides that the trial court shall investigate and decide what taxes shall have been legally assessed and charged on the real estate. There is no question but what the taxes necessary to pay tax bills were legally assessed and charged. It is well known that mortgage liens, materialmen's and mechanics' liens are inferior to liens for taxes. One who takes such a lien knows

this at the time of taking. It is such liens as these over which the lien for taxes has priority. The entire proceeding is an equitable one in its nature. We assume that trial courts will in the exercise of their discretion give such an interpretation to all of the provisions of chapter 375 as is required by the constitution.

Plaintiff next points out that section 1 of chapter 375 provides that "All real estate on which the taxes shall not have been paid as provided by law on or before the 20th day of June in each year, commencing with the year 1941, shall be subject to sale as hereinafter provided." Plaintiff argues that the meaning of this is that foreclosures should not be had as to any taxes except those unpaid in 1941 and subsequent to that date. Section 1 of chapter 375 amends G. S. 1935, 79-2301. That section had to do with the sale of real estate each year when the taxes were not paid for that particular year. It and the following sections to 79-2306 deal with the first step that must be taken before the foreclosure action provided for by section 16 and the following sections may be instituted. There is no conflict between these sections and section 1 of chapter 375. They supplement each other.

At about the same time when this case was filed in this court the case of the *Board of County Commissioners of Wyandotte County*, Plaintiffs, *v. E. R. Adams, et al., Granite Bituminous Paving Co. et al.*, Defendant, was tried in the district court of Wyandotte county. Judgment was entered in that case for plaintiffs foreclosing the lien of the county but holding that the lien of the Granite Bituminous Company was concurrent with the lien of the county for general taxes. The board of county commissioners appealed the judgment in that case to this court. This original action and the above-mentioned appeal were argued together. We had the benefit of briefs for the plaintiff and defendant in this case and for the appellees in the above case and also briefs by three parties as friends of the court. These briefs raise some questions with which we have not seen fit to deal in this opinion because the facts upon which a proper answer to them would depend do not appear in this record. It seemed wise also to deal with the two cases in two separate opinions, hence this opinion deals only with the quo warranto case.

The prayer of the plaintiff that the county commissioners be ousted from exercising their power to make the resolution directing the foreclosure action be brought is denied.