No. 35,411

The Board of County Commissioners of the County of Wyandotte, *Appellant*, v. E. R. Adams et al. (Granite Bituminous Paving Company, *Appellees*.)

(117 P. 2d 760)

Opinion filed October 11, 1941.

*Joseph M. McDowell*, county attorney, and *Thomas E. Joyce*, assistant county attorney, for the appellant.

*Reginald H. Glandon*, of Kansas City, for the appellees.

*J. S. Parker*, attorney general, *Eldon Wallingford*, *S. M. Terbovich* and *N. E. Snyder*, both of Kansas City, as *amici curiae*.

The opinion of the court was delivered by

Smith, J.: This was an action to foreclose a tax lien against real estate.

Judgment was entered foreclosing the general tax lien and holding that a lien created by a special tax bill was concurrent with a lien for general taxes. The board of county commissioners appeals.

The petition alleged that the taxes against 350 pieces of real estate in Wyandotte county were delinquent for more than five years. Amongst these pieces of real estate was lot 38 of block 1, Faircrest Addition, Kansas City. The petition prayed for foreclosure of this tax lien and the sale of the property to pay it. The general taxes amounted to $202.76.

The Granite Bituminous Paving Company was made a party to the action and answered alleging it owned a lien against the lot to

which reference has been made by reason of the improvement of the Eighteenth street trafficway, by reason of which special tax bill No. 15,784 of the series 26,361 was approved and accepted by the city commission.

The answer alleged that the tax bill was in the amount of $15.79, with interest at the rate of 7 percent from September 29, 1931, and interest at 8 percent on the unpaid installments to the date of payment, and that under these terms there was $36.65 owing the paving company. The answer alleged further that the above amount was a lien concurrent with the lien for general taxes. The paving company prayed judgment for that amount and for a separate lien upon the property concurrent with the lien of plaintiff, and that the plaintiff be ordered not to accept less than the amount of the lien of the answering defendant, and that the defendant have $36.65 with 8 percent interest paid to it.

When the case came on to be tried there was a stipulation as to the facts—first, that the action was instituted prior to March 31, 1941, pursuant to a resolution adopted by the board of county commissioners; that the lien which the county sought to foreclose amounted to $202.76; that the Eighteenth street road was one of the trafficways of Kansas City. There was no question raised as to the validity of the tax bill in question. It was stipulated that the only question before the trial court was whether or not the lien for the tax bill was superior to, concurrent with or subordinate to the lien for general taxes. It was further stipulated that another question to be determined was whether or not the county should sell the property subject to the tax bill, or if the lien for general taxes should be concurrent with the tax bill, then when the property is sold should the money be divided pro rata between the other taxing agencies and the holder of the tax bill, or should the amount of the tax bill be paid in full out of the proceeds of the sale before the other taxing agencies derive any of the proceeds. Another question stipulated was whether, where one lien was foreclosed according to law and subsequently thereto the other lien was foreclosed, the two lien-holders through their foreclosures are tenants in common.

The trial court found the lien for general taxes to be as alleged in the amount of $202.76, and that the real estate in question had been bid in by the county for the amount of these taxes and that the real estate had not been redeemed. The court found that the county commissioners had ordered the county attorney to institute an ac-

tion to foreclose and sell this real estate. The court further found that this lot was subject to a lien of a special tax bill and the amount due upon this tax bill was $36.65; and that it was issued against the property for special improvements pursuant to a city ordinance and that the lien for taxes in the amount of $202.76 and the lien of the special tax bill in the amount of $36.65 were concurrent liens and that such liens were prior and paramount to the lien or pretended liens of any other defendants herein and constituted a first lien upon the property.

The court decreed pursuant to these findings that the plaintiff should have judgment for the foreclosure of the tax lien against this lot in the sum of $202.76, together with the costs of this action, and that the Granite Bituminous Paving Company should have a concurrent lien thereon in the sum of $36.65; that these liens were prior and paramount to the lien or pretended liens of any other defendants and constituted a first lien upon the property. The court further decreed that if the property was not redeemed by the payment of the liens thereon, together with the costs of this action within ninety days that an execution or order of sale shall issue out of the office of the clerk of the court, directed to the sheriff of Wyandotte county, commanding him to cause this property to be advertised and sold for the payment of the tax lien and the lien of said special tax bill according to law and the proceeds derived from the sale shall be applied to discharge the liens, together with the costs accruing in the action, and the balance to be paid to the ascertained owner or party entitled thereto, but if the proceeds of the sale were insufficient to discharge the lien then the costs of the action should be first deducted and the balance prorated in proportion to the amount of the respective liens. The court further ordered that after the confirmation of the sale all persons claiming any right to the land should be foreclosed from ever asserting any right thereto.

The county appealed from this judgment.

The specification of errors sets out that the court erred in adjudging the lien for general taxes to be concurrent with the special tax bill held by the paving company; in fixing the time for the issuance of the order of sale at three months from the date of judgment instead of ten days, as provided by section 79-2804 of the General Statutes of 1935; and in adjudging that if the proceeds derived from the sale of the real estate were insufficient to pay the liens for general taxes and the liens of the special tax bill in full that the pro-

ceeds of the sale be first applied to the payment of costs and the balance prorated to the payment of the general taxes and special tax bill in proportion to the amounts thereof.

Appellants argue that the only question here is whether the legislature had the authority to provide that the lien for taxes to pay special improvements should be subordinate to the lien for general taxes.

Granting, for the sake of argument, that the legislature does have such authority, or that a statute so providing would be constitutional, we shall examine the pertinent statutes to ascertain whether or not the legislature did so provide. The statute pursuant to which this action was filed is G. S. 1935, 79-2801. It was first enacted by the legislature of 1901 (see Laws of 1901, ch. 392). The provisions are in the main the same; that is, the action to foreclose must be against the owner or supposed owner of the real estate, and all persons having any interest therein. It provided that the court should determine the amount of the taxes and should adjudge the amount so due to be a first and prior lien upon the property and should order it sold to pay the lien and costs. The act of 1901 was carried into the statutes for 1923 and was amended in 1931, but in no particular that concerns us here.

While these acts were in effect the acts under which this tax bill was issued were enacted. They are G. S. 1935, 13-1078a to 13-1089. These sections were enacted in the main at the session of 1927. The act of 1901 was in effect at that time and is unrepealed now. G. S. 1935, 13-1078a et seq., provides for the issuance of the tax bills and that the lien created by them shall be superior to all other liens. If the language stopped there we would conclude that the legislature intended that these liens should be superior to liens for general taxes. The statute went ahead, however, and provided further as follows: "excepting the lien for general taxes and shall be concurrent with such general tax lien." Had the legislature intended that the lien created by the tax bill should be inferior or subordinate to the lien for general taxes it would not have put in the last clause, that is, "and shall be concurrent with such general tax lien." This is a clear and unmistakable provision to the effect that the two liens shall be of equal force and effect or that neither one should have precedence over the other. The last expression of the legislature on the subject prior to the enactment of chapter 375 of the Laws of 1941 was the enactment in 1937 of what appears as G. S.

1939 Supp. 13-1079. That section contains the same provision as to the two liens being concurrent. The trial court was correct in concluding that in this case the land should be sold and the proceeds derived from the sale should be applied to discharge the liens and that in the event the proceeds were insufficient to discharge the liens in full then after the costs were paid the money received should be divided pro rata between the two liens.

G. S. 1935, 79-2804, the statute providing for the foreclosure of general tax liens, also provides that the sale shall be ordered after ten days from the date of judgment. G. S. 1935, 13-1087, the statute providing for foreclosing the lien for tax bills, provides that the sale shall be had after three months from the date of judgment. The court in this case ordered the sale to be within ninety days of the date of the judgment pursuant to the provisions of the statute with reference to foreclosing liens for tax bills.

G. S. 1935, 13-1087, provides that the court shall enter a decree ordering the property sold without redemption after the expiration of three months from the date of the judgment. The intention of the legislature undoubtedly was to permit the owner of the land, upon which the lien was being foreclosed, to come in and pay the amount of the lien, with costs, any time within three months after the date of the judgment. This must have been the intention of the legislature, or the provisions of the statute providing that the sale should not take place until three months after the date of judgment are meaningless. This action was brought to foreclose a lien for general taxes. The holder of the tax bill was made a party defendant. The judgment is to foreclose two liens which we have held to be concurrent. Since the owner of the property has the right under the statute to pay the amount due under the lien for the tax bill within three months after judgment it would not do to take away this right by holding that the sale should take place within ten days—hence the court was correct in holding that this sale should take place after three months from date of judgment.

There were some other questions raised by the briefs of friends of the court in this case. However, we do not find these questions are covered by the judgment entered by the trial court and we do not care to pass on them until the trial court has had an opportunity to do so.

The judgment of the lower court is affirmed.