No. 35,827

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Appellee,* v. GENERAL SECURITIES CORPORATION, INC. (et al.), *Appellant.*

(138 P. 2d 479)

Opinion filed June 12, 1943.

*N. E. Snyder,* of Kansas City, argued the cause for the appellant.

*Thomas E. Joyce,* assistant county attorney, argued the cause, and *Samuel M. Terbovich,* county attorney, was on the briefs for the appellee.

*Alton H. Skinner,* of Kansas City, as *amicus curiae.*

The opinion of the court was delivered by

PARKER, J.: This action was instituted by the Board of County Commissioners of Wyandotte county to foreclose liens for general taxes subject to foreclosure under chapter 375 of the Laws of 1941, now appearing as G. S. 1941 Supp. 79-2801 *et seq.*

On the date of the institution of the action the General Securities Corporation, Inc., was the owner of special tax bills issued by the city of Kansas City, Kan., under authority of chapter 133 of the Laws of 1927 and amendments thereto, now appearing as G. S.

1935, 13-1079 *et seq.*, against a number of tracts of real estate to pay the costs of special improvements, such tax bills having been issued by the city on or about December 6, 1938.

The general taxes on the tracts of land against which the General Securities Corporation held special tax bills had not been paid and such tracts were included in the tax foreclosure action. In compliance with G. S. 1941 Supp. 79-2802, which requires all persons having or claiming to have any interest in the land sought to be foreclosed to be joined as a party defendant, the corporation was made a defendant in the action and duly served with process. There were many defendants, but of these only the corporation has appealed from the judgment rendered by the trial court. Hereafter in the interest of brevity it will be referred to as the defendant.

Defendant's answer contained a general denial and the equivalent of a demurrer in that it alleged the petition and each and every cause of action set forth therein failed to state facts sufficient to constitute a cause of action. Inasmuch as the petition was not abstracted we shall regard it as sufficient in form and assume this objection was based on the theory the statute on which the plaintiff relies was unconstitutional, and hence could not be relied on for recovery irrespective of whether the allegations of the petition were properly pleaded.

The answer also set forth the sundry tax bills held by defendant against the various tracts of real estate involved and in substance further alleged: Plaintiff had no right to foreclose defendant's lien or compel it to do so; the amount of each tax bill was a lien until paid by terms of the statute, the ordinance under which it was issued and the tax bill itself, the terms of all of which when the tax bill was issued constituted a contract with the purchaser; if plaintiff was permitted to foreclose its lien and exclude defendant's lien in the event the sale following foreclosure failed to realize sufficient to satisfy both, the foreclosure would deny equality with plaintiff's lien and result in an impairment of the obligations of defendant's contract contrary to the United States Constitution, article 1, paragraph 10, and the fourteenth amendment; the amount due under terms of the tax bills was to be paid in ten annual installments, only two of which had accrued; defendant had not exercised its option to declare the whole amount due, and to compel it to foreclose its lien for the entire amount due would impair the rights guaranteed by such constitutional provisions; the law under which

tax bills were issued guaranteed to the holder an equality of lien concurrent with the lien of general taxes and superior to all other liens; such lien continued to exist until the entire amount due by the terms of the tax bill was fully paid and there could be no impairment of the contract rights which had vested contrary to the provisions of the constitution referred to, either by selling and conveying property covered by the tax bill free and clear of all liens when the amount due thereunder had not been paid defendant, or by compelling it to foreclose its lien which it had not exercised its option to declare due.

Also included in such answer was an additional paragraph and a prayer for relief which reads as follows:

"Further answering defendant General Securities Corporation, Inc., states that in *State v. Wyandotte County Commissioners*, (1941) 154 Kan. 222, an action brought to test the constitutionality of chapter 375 of Laws of Kansas, 1941, the validity of said law was drawn in question as violating section 10, article 1, of the constitution of the United States, and as violating the rights guaranteed by the 14th amendment to the constitution of the United States, and it was held that in an action to test the constitutionality of that statute the Supreme Court would assume that the trial court would construe the 'statute in conformity with the constitution.' Further answering defendant General Securities Corporation, Inc., states that in *Wyandotte County Commissioners v. Adams*, (1941) 154 Kan. 233, it was held that the lien for general property taxes and the lien created by the special tax bill were concurrent, of equal force and effect, and that neither one should have precedence over the other; and if plaintiff's lien should be foreclosed and said property sold in satisfaction thereof, then it should be sold subject to said lien of this defendant; otherwise, the vested contractual rights of this defendant will be impaired and destroyed contrary to the provisions of section 10 of article 1 of the constitution of the United States and contrary to the provisions of the fourteenth amendment to the constitution of the United States.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Wherefore having fully answered defendant General Securities Corporation, Inc., demands judgment that neither its liens nor the obligations of its contracts be impaired; that if said property be sold to satisfy plaintiff's lien that said property be sold subject to the lien of this defendant; that if said property be sold and deeds issued therefor by the sheriff, that said deeds convey the property to the purchaser subject to the liens of this defendant for any balance due thereon until paid. . . ."

In the absence of an abstract of the substance of the petition it should be stated the record of the proceedings during the trial shows a colloquy between counsel for the parties clearly evidencing that at no stage of the proceedings was it claimed by plaintiff it could in the instant action foreclose or in any manner impair the lien of special

tax bills for future installments, accruing subsequent to the tax year for 1941, the general tax liens for which year were properly included in the present foreclosure action.

On these issues this case was tried to the court which in due time rendered the following judgment:

"It is therefore by the court . . . decreed, that the plaintiff have judgment for the foreclosure of its tax liens against each piece, parcel and tract above mentioned in the sum above specified together with costs as taxed and the same is hereby made a first and prior lien on said property; except as to such property as is hereinbefore found to be subject to the lien of a special tax bill, which lien is concurrent with plaintiff's lien and the lien of said special tax bills are hereby foreclosed as to all installments due thereon up to and including the installments due in 1941, . . . That a special execution or order of sale shall forthwith issue . . . directed to the sheriff of Wyandotte County, Kansas, commanding him to cause such property to be advertised and sold according to law. That the proceeds of the sheriff's sale held under and by virtue of such execution or order of sale shall be applied as follows: First, to the payment of the lien of the plaintiff on said property, together with the costs apportioned to said tract or parcel of real estate but if the same be hereinbefore found to be encumbered by a lien of a special tax bill issued by the city of Kansas City, Kansas, then the proceeds of said sale shall be prorated between plaintiff's lien for general taxes and the concurrent lien of the owners and holders of each such special tax bill, in proportion to the amount of the lien for general taxes and the lien of each special tax bill after deducting the apportioned costs; . . .

"It is further . . . decreed, that upon the sale of the various tracts . . . and the confirmation . . . the sheriff shall execute a good and sufficient deed as provided by law to the purchaser at said sale, which deed shall vest in the purchaser a fee simple title free and clear of any liens held by parties to this proceeding, except the lien for general taxes and the installments upon special tax bills of the city of Kansas City accruing subsequent to the year 1941, and the sheriff's deed shall recite that 'This conveyance is subject to general taxes and installments upon special tax bills of the city of Kansas City (if any) accruing subsequent to the year 1941.'"

From this judgment the defendant appeals and under proper specification of error submits for our consideration the following questions:

"1. Should *Wyandotte County Commissioners v. Adams,* 155 Kan. 160, now be overruled since it does not correctly express the intent of the legislature in enacting chapter 133, Laws 1927, and amendments thereto?

"2. Does chapter 375, Laws 1941, when construed to eliminate the lien of appellant's special tax bills or any installment due or to become due thereon impair the obligations of appellant's contract, contrary to the provisions of section 10 of article 1 of the constitution of the United States and contrary to and in violation of the 14th amendment to the constitution of the United States?

"3. May the Board of County Commissioners of Wyandotte County foreclose the lien of the appellant's special tax bills over appellant's objections?"

We now direct our attention to questions 2 and 3 which can be considered together and will presently dispose of question 1.

Various phases of questions 2 and 3 have heretofore had the attention of this court. In *State, ex rel., v. Wyandotte County Comm'rs*, 154 Kan. 222, 117 P. 2d 591, it was held that there was no unconstitutional infirmity in chapter 375 of the Laws of 1941, now G. S. 1941 Supp. 79-2801 to 79-2809, inclusive.

*Wyandotte County Commissioners v. Adams*, 154 Kan. 233, 117 P. 2d 760, was an action to foreclose general liens for taxes under the provisions of G. S. 1935, 79-2801, which was first enacted by the legislature of 1901 (Laws 1901, ch. 392). The issue was whether a lien for a tax bill against a certain tract of real estate under authority of chapter 133 of the Laws of 1927 was superior to, concurrent with or subordinate to, the lien for general taxes on such tract and whether the county should sell the property subject to the tax bill, or if the liens for general taxes were found to be concurrent with the tax bill, then, whether when the property was sold the money realized therefrom should be divided pro rata between the other taxing agencies and the holder of the tax bill or the amount of the tax bill be paid in full, out of the proceeds of the sale before the other taxing agencies derived any of the proceeds. It was held the lien of the tax bill was concurrent with the lien for general taxes, that the property should be sold within ninety days from the date of the judgment for the payment of both liens and the proceeds derived from the sale applied to their payment, together with costs, but if the proceeds of the sale were insufficient to discharge such liens then the costs of the action should be first deducted and the balance prorated in proportion to the amount of the respective liens. Also, that after the confirmation of sale all persons claiming any right to the tract of land involved should be foreclosed from ever asserting any right thereto.

*Wyandotte County Comm'rs v. Adams*, 155 Kan. 160, 123 P. 2d 818, was also an action to foreclose liens for general taxes under the provisions of the same statute. The question presented, it being conceded that *Wyandotte County Comm'rs v. Adams,* supra, was determinative of the issues therein decided, was whether the liens for accrued installments of special tax bills were extinguished by foreclosure of the liens for general taxes if the proceeds of the resulting sale were not sufficient to satisfy all liens. It was held the liens of the special tax bills maturing in and prior to 1939, such year

being the year for which general tax liens were properly included in the action, were extinguished by the judgment and that the sheriff's deed thereunder would pass a fee-simple title free and clear of all such liens and encumbrances.

It should be noted the cases just cited were brought to foreclose liens accruing for general taxes up to and including the year 1939, under authority of G. S. 1935, 79-2801. The issues involved in the instant case, aside from the one to which we shall later refer, are the same as those determined in such cases except for the fact the appellee herein sought to foreclose its liens accruing for general taxes up to and including the year 1941 under authority of chapter 375 of the Laws of 1941, which amended the former statute in certain respects. We have compared the provisions of the amended statute with those of the statute in force and effect at the time of the rendition of the decisions in the cases above referred to. Our comparison discloses the changes to be found in the 1941 enactment are more procedural than substantive, and that there is no basis for a conclusion the procedure for enforcing the liens of general taxes provided for therein is substantially different from that which obtained before its enactment. We have no difficulty in concluding that there is nothing in the amended statute which impairs, hampers or obstructs appellant in the fulfillment of its contract or which takes away any material or substantial rights it acquired on the date of the acquisition of its tax bills under existing statutes, including the special tax bill statute then in force and effect. Nor do we experience any difficulty in deciding there is nothing in the amended statute which would require or justify a reversal of our earlier decisions.

In support of its position that to construe chapter 375 of the Laws of 1941 in such manner that its lien for installments due under and by virtue of its special tax bills is foreclosed in the instant action impairs the obligation of its contract, contrary to the provisions of the constitution, article 1, section 10, and the provisions of the 14th amendment to the constitution, the appellant has again called our attention to many of the authorities cited in support of the similar contention advanced in 154 Kan. 233, *supra*, and 155 Kan. 160, *supra*. The persistence with which counsel for appellant has pursued this subject and the efficient manner in which he has presented the issues, together with a full realization of his sincerity in presenting the righteousness of his cause, has impelled us to reëxamine

the many briefs filed in behalf of the various parties in all these cases, as well as the authorities submitted by him, and many others, which we believe to be determinative of the issues.

The fallacy of appellant's arguments rests, not in the rule of law announced by him but in the application of that rule to the situation confronting us in this appeal.

As authority for its position appellant cites *State, ex rel., v. Barker*, 4 Kan. 379; *Hall v. Wisconsin*, 103 U. S. 5, 26 L. Ed. 302, and *State, ex rel., v. State Highway Comm.*, 139 Kan. 391, 92 P. 2d 493, each of which is authority for the rule that where a contract is made under authority of law the right of property arising from the contract cannot be divested by subsequent legislative action. That rule is well grounded and we are in accord with the decisions in those cases. The trouble from appellant's standpoint is that they all have reference to a situation where the legislature attempted to do the very thing the rule announced therein prohibited—the taking away of vested contractual rights by subsequent legislation. Cited also are the following cases: *Nelson v. Pitts*, 126 Okla. 191, 259 Pac. 533, 53 A. L. R., where a subsequent statute had been enacted providing for the extinguishment of special improvement bond liens; *Moore v. Otis*, 275 Fed. 747, where the legislature had enacted a statute providing for the apportionment of money received from a tax sale on which there were existing tax liens, not to the payment of the liens but to an entirely different purpose, and providing in fact for a total avoidance of the existing obligation; *Brown-Crummer Inv. Co. v. Paulter*, 70 F. 2d 184, where the Oklahoma legislature had passed a statute remitting the penalties to be paid by delinquent taxpayers which by the statute authorizing the issuance of paving bonds became a part of the obligation and inured to the benefit of the holders of such bonds. These cases and numerous others which we have examined in our investigation of this subject are all authority for the doctrine that. when contracts for public improvements are made under authority of statutes which permit the issuance of special tax bills to defray the expenses thereof, which are made a lien upon the property benefited, the provisions of the existing statutes and the tax bills issued to secure the payment of the indebtedness enter into and become a part of the contract to such extent the obligations thereof cannot thereafter be impaired or their fulfillment hampered or obstructed by subsequent legislation.

It should be noted the cases just referred to all deal with subse-

quent legislation impairing the obligation of a contract. Nowhere is there to be found a suggestion that statutes in effect on the date of the execution of such contract or subsequent procedural amendments thereto, come within the constitutional inhibition, nor is it suggested that contractual rights of an obligation—such as a special tax bill—are determined by the provisions of one statute to the exclusion of such others as are in full force and effect on the date it comes into existence.

When the special tax bills involved herein were issued G. S. 1935, 79-2801 *et seq.*, providing for judicial foreclosure of general tax liens and the sale of real estate under its provisions, was in full force and effect. In fact, that statute was enacted long prior to the date of the enactment of chapter 133 of the Laws of 1927, which authorized the execution of tax bills and recognized their validity. Therefore, G. S. 1935, 79-2801, became as much a part of the terms and conditions of the tax bills as the statute which authorized their execution, and when issued such tax bills were subject to the requirements and restrictions of its provisions. Since we have determined that the provisions of chapter 375 of the Laws of 1941, in amending the original statute were procedural, not substantive, and did not take away any material or substantial rights acquired by appellant as the holder of such tax bills, it must follow and we hold that the judgment in foreclosure as rendered by the trial court did not deprive appellant of his property without due process of law or violate any of the provisions of the constitution of the United States. This conclusion also disposes of appellant's contention the appellee could not foreclose the lien of the special tax bills over its objection. To hold otherwise would disregard the plain language of the statute which provides their lien shall be concurrent with the general tax lien.

We now give our attention to what is in fact the only new question urged by the appellant on this appeal. Our attention is directed to House bill 168, enacted at the 1943 session of the Kansas legislature, which reads:

"AN ACT declaring the intent and meaning of the legislature in enacting chapter 133 of the Session Laws of 1927, and amendments thereto, with reference to the lien of special tax bills thereby authorized and issued.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. It is hereby declared that in enacting chapter 133 of the Session Laws of 1927, and amendments thereto, now appearing as sections 13-1079 to 13-1088, inclusive, of the General Statutes of 1935, and all amendments thereto,

the legislature meant and intended that neither the lien of any special tax bill nor any installment due or to become due thereon should be extinguished by foreclosure, of any general tax lien or any other lien, but that the lien of the special tax bill and all installments thereof should continue to exist until extinguished by payment of the full amount due or until foreclosed by the owner and holder of the special tax bill.

"Sec. 2. This act shall apply to all pending proceedings.

"Sec. 3. . . ."

Appellant insists the language above quoted is a legislative interpretation of the earlier acts pertaining to the lien of special tax bills and that it requires us not only to give it force and effect in the instant action in our application of the prior tax bill statutes to transactions which occurred or rights of action which accrued prior to its passage, but also to overturn the interpretation already given by us to such statutes in *Wyandotte County Comm'rs v. Adams*, 155 Kan. 160, *supra*. Our consideration of this question convinces us that appellant's contention is not sound.

House bill 168, for the moment assuming but not conceding its validity, purports to be a statute expository or declaratory in character.

In 12 C. J. 811 to 813, section 247, the general rule is stated as follows:

"A declaratory or expository statute is one that is passed in order to put an end to a doubt as to what is the common law or as to the meaning of another statute. Such statutes are without the sphere of constitutional legislative action insofar as any retrospective operation is concerned, and they can neither overturn an interpretation already given by the courts, nor bind the latter, with respect to the application of the original statutes, to transactions which occurred or rights of action which accrued prior to the passage of the declaratory act. . . .

"A statute which changes the common law or modifies an existing statute is not invalidated by the fact that it assumes the law to have been in the past what it is now declared to be for the future. Some authorities go even further and hold that a declaratory statute, although retrospectively void, is valid as to future cases. Other authorities, however, hold that a legislative body cannot compel the courts to adopt a particular construction of a law which the legislature permits to remain in force; and that unless the declaratory act constitutes an express or implied amendment of the original act, it will not be binding on the courts, even though it is entirely prospective in its operation and expressly confined to future cases. The substance and not the mere form of the enactment determines whether the statute is declaratory or amendatory within this rule."

In 16 C. J. S. 300, section 112, which deals with the force and effect of declaratory statutes generally, we find the following statement:

"However, such statutes are without the sphere of constitutional legislative action insofar as any retrospective operation is concerned; and they can neither overturn an interpretation already given by the courts, nor bind the latter, with respect to the application of the original statutes to transactions .which occurred or rights of action which accrued prior to the passage of the declaratory act."

To the same effect is 1 Cooley's Constitutional Limitations, 8th ed., 190, wherein is also discussed the validity of declaratory statutes with respect to their retroactive effect. It reads:

"But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the courts."

See, also, 11 Am. Jur. 914, section 209, dealing with the same subject, stating the rule:

"The legislatures of the several states have occasionally attempted to incorporate in statutes statements of fact or conclusions of law, and the question may arise as to whether this amounts to an improper assumption of judicial power. The legislature has power to prescribe legal definitions of its own language, and such a definition is binding on the courts. The legislature in some jurisdictions also has the power to declare by subsequent statute the construction of previous statutes, so as to bind the courts in reference to all transactions occurring after the passage of the law, and thereby enunciate the rule to govern the courts in transactions that are past, provided no constitutional rights of any parties are prejudiced. This is an invasion of the judicial power, however, even in such jurisdictions, if it purports to affect pending cases. The rule is recognized elsewhere that the legislature cannot pass any declaratory act, or act declaratory of what the law was before its passage, so as to give it any binding weight with the courts."

The same rule is stated in 6 R. C. L. 161, section 161.

See, also, *Clayton v. Schultz*, 4 Cal. (2d) 425, wherein it was held:

"While a declaratory statute cannot bind the courts with respect to application of the original statute to transactions which occurred, or rights of action which accrued, prior to passage of the declaratory act, in the absence of intervening rights an act declaratory of a former one has the same effect as if embodied in the original act at the time of its passage." (Syl. ¶ 5.)

Also, see *Koshkonong v. Burton*, 104 U. S. 668, 679, 26 L. Ed. 886, where it was held:

"If interest upon interest, whether arising upon express or implied agreement, is allowed by the local law, at the time of the contract, that right cannot be impaired by a subsequent legislative declaration as to what was, in the judgment of that department, the true intent and meaning of the statutes,

prescribing and limiting the rate of interest, in force when the contract was made. The utmost effect to be given to such legislative declaration is to regard it as an alteration of the existing law in its application to future transactions." (Syl. ¶ 3.)

Many other authorities following the rule above stated might be cited, but we feel those we have referred to are more than sufficient to substantiate our announced conclusion that the enactment of House bill 168, even if its validity should be conceded, does not affect the rights of the litigants in the instant action, and under no circumstances would justify the overruling of prior decisions of this court on questions similar to those herein involved.

As far as it involves the questions raised by appellant in this appeal, we might end our deliberations here and affirm the judgment of the trial court on the basis of the conclusions heretofore announced. However desirable that action may seem, we cannot yield to its inducements for it is our obligation to dispose of all issues properly raised by the parties. Included in such issues is the contention of appellee, directly raised in its brief, that House bill 168 is not only unconstitutional because its provisions amount to an encroachment upon the judicial powers of the court by the legislature but also because it violates article 2, section 16 of the state constitution. We are obliged, therefore, to here dispose of such questions before concluding this opinion.

With respect to encroachment by the legislature on judicial powers it should be noted article 3, section 1 of the constitution reads:

"The judicial power of this state shall be vested in a supreme court, district court, . . ."

In 11 Am. Jur. 908, section 206, it is said:

"The legislature cannot ordinarily diminish, enlarge, or interfere with the jurisdiction of a court as defined by the Constitution. . . .

"The rule is well settled that the judicial power cannot be taken away by legislative action. Any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional. . . . It has no power to direct the judiciary in the interpretation of existing statutes."

See, also, 16 C. J. S. 300, 303, 424, sections 112, 115, 144, wherein it is stated:

"While the legislature cannot direct the judiciary in the interpretation of existing statutes, and statutes granting no new rights but merely construing former enactments are void as an encroachment on the judiciary, it has been held that declaratory statutes are entitled to respectful consideration by the courts to the extent that they constitute legislative constructions of doubtful phraseology, even though their interpretation may not be binding, and some

authorities hold that a declaratory statute, although retrospectively void, is valid as to future cases, and that, in the absence of intervening rights, an act declaratory of a former one has the same effect as if embodied in the original act at the time of its passage, but other authorities hold that a legislative body cannot compel the courts to adopt a particular construction of a law which the legislature permits to remain in force and that unless the declaratory act constitutes an express or implied amendment of the original act, it will not be binding on the courts, even though it is entirely prospective in its operation and expressly confined to future cases." (§ 112.)

"The determination of the true state and meaning of the existing law is not a legislative function, but is a judicial function, as shown infra, § 144, and the legislature cannot declare what the law was in the past." (§ 115.)

"The judiciary or judicial department of government is that branch thereof which is intended to interpret, construe, and apply the law, or that department of government which is charged with the declaration of what the law is, and its construction, so far as it is written law.

"The question as to what particular powers are essentially judicial is to be solved by ascertaining the definition and scope of such powers at the time the constitution in question was adopted, but in accordance with the very definition of the judiciary or judicial department as the one that interprets, construes, declares, and applies the law, as stated previously in this section, the primary functions of the judiciary are to declare what the law is and to determine the rights of parties conformably thereto. . . . ." (§ 144.)

To the same effect is 12 C. J. 812, section 247, which reads:

". . . Statutes granting no new rights but merely construing former enactments are void as an encroachment on the judiciary . . ."

See, also, Cooley's Constitutional Limitations, 8th ed., 183, 184, 191, where the author, in dealing with the powers possessed by the legislative and judicial branches of the state, lays down the following rule:

"The legislative power we understand to be the authority, under the constitution, to make laws and to alter and repeal them . . ." (p. 183.)

"On the other hand, to adjudicate upon, and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department." (p. 184.)

"As the legislature cannot set aside the construction of the law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. 'To declare what the law is, or has been is a judicial power; to declare what the law shall be, is legislative. One of the fundamental principles of all our governments is, that the legislative power shall be separate from the judicial.' If the legislature would prescribe a different rule for the future from that which the courts enforce, it must be done by statute, and cannot be done by a mandate to the courts, which leaves the law unchanged, but seeks to compel the courts to construe and apply it, not according to the judicial, but according to the legislative judgment. . . ." (p. 191.)

Likewise, in 6 R. C. L. 161, section 161, it is said:

". . . The legislature in some jurisdictions also has the power to declare by subsequent statute the construction of previous statutes, so as to bind the courts in reference to all transactions occurring after the passage of the law, and thereby enunciate the rule to govern the courts in transactions that are past, provided no constitutional rights of any parties are prejudiced; though this would be an invasion of the judicial power, if it purported to affect pending cases. . . ."

We have been cited to, and our investigation discloses, no Kansas cases wherein the validity of a purported expository or declaratory statute, similar to House bill 168, *supra*, had been directly challenged on the express ground it encroaches upon the power conferred upon the judicial branch of our state government by the constitution. However, our investigation discloses this question has been raised in other states, and that where it has been given consideration such enactments have been held to be unconstitutional.

In *Lincoln Building and Saving Association v. Graham*, 7 Neb. 173, it was held:

"An expository statute, which is substantially in the nature of a mandate to the courts to construe and apply a former law, not according to judicial, but according to legislative judgment, is inoperative, and cannot control the courts in interpreting the law and declaring what it is." (Syl. ¶ 3.)

Likewise, in *Macartney v. Shipherd*, 60 Ore. 133, 117 Pac. 814, it was held:

"Under section 1, article III, of the constitution of Oregon, providing for the distribution of governmental powers and prohibiting one branch from exercising the functions of the other, Act Feb. 21, 1911 (Laws 1911, p. 195), which, after reciting that certain sections of the code had created doubts as to whether the time to take an appeal ran from the date of the entry of the judgment or from the entry of the order granting or denying a new trial, provided that appeals filed within six months after the denial of a motion for new trial should be validated, is unconstitutional, as an encroachment on judicial powers, in that it grants no new right of appeal, but construes former enactments." (Syl. ¶ 5.)

To the same effect is *Lindsay v. United States Savings & Loan Association et al.*, 120 Ala. 156, 168, and *Caylor v. State*, 219 Ala. 12, 14, 121 So. 12.

The same rule is followed in *Walker v. United States*, 83 F. 2d 103, 106, and *United States v. Salberg*, 287 Fed. 208, 213.

That an act which amounts to encroachment of legislative upon judicial power is unconstitutional and void was determined by this court in *Felix v. Wallace County Comm'rs*, 62 Kan. 832, 62 Pac. 667, and in *Railway Co. v. Simonson*, 64 Kan. 802, 807, 68 Pac. 653.

While, as has been stated, House bill 168, *supra*, purports to be a statute expository or declaratory in character, a critical examination of its provisions discloses it to be more than that as such terms are commonly considered. Its provisions purport to interpret former laws, and are substantially in the nature of a mandate to the courts to construe and apply such former laws—as to all pending proceedings—not according to judicial, but according to legislative judgment. We believe this requirement, in the light of the authorities here cited, is clearly an invasion of the judicial power by the legislature.

We now briefly direct our attention to appellant's contention the act in question fails to meet the requirements of article 2, section 16 of the state constitution, which reads:

"No bill shall contain more than one subject, which shall be. clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed."

It should be noted that House bill 168, *supra*, neither expressly amends nor expressly repeals any existing statute. However, if construed to be valid it has that effect, for G. S. 1941 Supp. 13-1079 provides: "Said special tax bills when so issued shall be a lien upon the property . . . until paid, which lien shall be superior to all other liens excepting the lien for general taxes, and shall be concurrent with such general tax lien; . . ." The new enactment makes the tax bill lien superior to, not concurrent with, the general tax lien, and impliedly repeals G. S. 1941 Supp. 79-2801, providing for judicial foreclosure and sale of real estate by the county for taxes, also G. S. 1941 Supp. 79-2804, providing the deed executed pursuant to such foreclosure sale shall vest in the purchaser as against all persons, parties, to such proceedings, a fee-simple title in the lands purchased by him. Moreover, it attempts to require the court, without changing or amending the old tax bill law, in any way, to place an entirely different construction upon the language to be found therein. As an amendment to an existing statute it wholly fails to meet the constitutional requirement.

That the provisions of article 2, section 16 of the state constitution which reads: ". . . No law shall be revived or amended unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed," is mandatory, was determined by this court in *Hicks v.*

*Davis*, 97 Kan. 662, 156 Pac. 774, and that an act of the legislature which attempts to amend or repeal a prior act must conform to the procedure prescribed by this provision of the constitution was held in *Hicks v. Davis*, supra; *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030, and in *Atchison, T. & S. F. Rly. Co. v. Board of Education*, 123 Kan. 378, 255 Pac. 60.

Appellant calls our attention to the fact that legislation similar to House bill 168 has been enacted and cites chapter 202 of the Laws of 1923, wherein it was declared to have been the intention of the legislature in enacting chapter 255 of the Laws of 1921, and chapter 200 of the Laws of 1923, "to include by the terms therein used any person, otherwise qualified, who served honorably but died before receiving a discharge." Quite true. But we fail to find any decision wherein the constitutional validity of this enactment was specifically raised. It was not questioned in *Richardson v. Soldiers' Compensation Board*, 150 Kan. 343, 346, 192 Pac. 2d 114, which appellant cites and wherein the writer of that opinion set forth a résumé of the various legislative enactments affecting the soldiers' compensation act. Nor was its constitutionality passed upon in *State, ex rel., v. Davis*, 113 Kan. 584, 217 Pac. 903, where the validity of the several acts, including the one referred to by appellant, authorizing the payment of soldiers' compensation, was questioned in that proceeding, for in announcing its decision this court said:

"The validity of the laws passed on this subject is challenged by the plaintiff, but no defect is pointed out, and the court is unable to find any. The court is asked to search the law and proceedings for any possible defect which may exist, and to point it out. That the courts declines to do." (p. 587.)

Courts are loath to hold enactments of the legislature to be unconstitutional and this court has repeatedly held that there is time enough for it to pass upon the validity of a statute in that regard when the question is raised by someone who is hurt by it. No doubt, if, as in the instant case, any constitutional infirmity in the statute referred to by appellant had been properly presented to this court or specifically pointed out, that issue would have been determined in line with the authorities here cited. Moreover, the fact that an unconstitutional statute has been enacted by legislative authority and remains in the statute book indefinitely without challenge, in no sense imparts legality to a subsequently enacted statute possessing an infirmity similar in character, and it becomes

the duty of this court to pass upon the constitutionality of the subsequent enactment if, as and when, that question is properly presented for determination.

In accordance with the conclusions herein announced the judgment of the district court is affirmed.