No. 36,439

THE STATE OF KANSAS, ex rel. LAWRENCE M. WALKER, County Attorney of the County of Crawford, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CRAWFORD, D. J. SAIA, Chairman, AUGUST DORCHY and IRWIN BOLZE, as Members of said Board, *Defendants*.

(159 P. 2d 414)

Opinion filed June 9, 1945.

*Lawrence M. Walker*, of Pittsburg, was on the briefs for the plaintiff.
*Paul A. Clark*, of Pittsburg, was on the briefs for the defendants.

The opinion of the court was delivered by

HARVEY, C. J.: While framed in mandamus, the purpose of this action is to determine under what statute the board of county commissioners is authorized to sell real estate acquired under a judicial sale in tax foreclosure actions. The facts are stipulated and those pertinent may be summarized as follows: In accord with G. S. 1935, 79-2302, 79-2303, 79-2304 and 79-2306, and amendments thereto, two described lots of real estate (a), (b), in the city of Pittsburg, were sold September 5, 1933, for the taxes of 1932 and bid off in the name of the county; that the real estate having remained unredeemed from such sale, the board of county commissioners, in September, 1941, ordered the county attorney to institute a suit in the district court of Crawford county to enforce the tax liens against the real estate above mentioned, and other tracts, as provided by G. S. 1941 Supp. 79-2801 to 79-2805; that the suit was duly brought; that the court found the amount of the lien of taxes and other legal items to be $396.81 on lot (a) and $333.85 on lot (b) and decreed that the liens be foreclosed and the real estate be sold by the sheriff under an order of sale issued by the clerk; that the sale was had October 5, 1942; that the board of county commissioners instructed the sheriff in the event the highest bid on each tract of real estate did not equal the full amount of the liens thereon the sheriff should

bid in the real estate in the name of the county; that the sheriff did bid in the real estate, lots (a) and (b) in accordance with such instructions; that thereafter the sale was confirmed and sheriff's deeds issued to the county for the lots in question and duly recorded, and that the suit was fully completed and the proceeds of the sale were properly distributed.

It was further stipulated that on May 11, 1945, the board of county commissioners reduced the price of each of the tracts above mentioned to $10 each, which amount in the judgment of the board was the market value of each of the tracts, and concluded to sell the tracts for the sum of $10 each; that on May 14, 1945, one Nick Simion made a written offer to the board of county commissioners to purchase each of the tracts for the sum of $10 and tendered to the board the amount of the purchase price therefor. In the motion for the writ it was alleged that the board of county commissioners refused to accept the sum of $10 for each of the tracts tendered by Simion, although regarding that sum as the fair market value of the property, giving as a reason therefor the enactment of House bill No. 340 of the 1945 session of the legislature, and particularly section 7 of the bill (Laws 1945, ch. 362, § 7), hereinafter referred to as House bill No. 340, which became effective April 1, 1945. The prayer is for a writ requiring defendants to accept the tender and execute a deed to Simion for each of the tracts.

At the time of the judicial sale of the real property here involved in 1942 the section of the statute then in force, giving authority for the board of county commissioners to sell the property bid off by the sheriff for the county at such a sale, is found in section 26 of chapter 375 of the Laws of 1941 (G. S. 1941 Supp. 79-2804f, amended by § 5, ch. 302, Laws 1943, by adding a sentence not here important), and as it pertains to the authority to sell at a reduced price reads as follows:

". . . If, at the end of six months from and after the acquiring of title by the county to any of said real estate, any of said real estate remains unsold, the board of county commissioners may reduce the price therefor to a sum that, in their judgment, would be the market value thereof, and sell the same at said reduced price. . . ."

This section was amended by the 1945 legislature by House bill No. 340, section 7, the pertinent portion of which reads:

". . . If at the end of six months from and after the acquiring of title by the county to any of said real estate, any of said real estate remains unsold, the board of county commissioners may reduce the price therefor and

sell the same after first advertising the same once each week for three consecutive weeks in said county describing said real estate giving the location thereof and requesting sealed bids therefor on or before a specified date and said board shall accept the highest cash bid received. If no bid be received such board may sell the same for such sum that, in their judgment would be the market value thereof: *Provided, however,* The board of county commissioners, at any time after the end of six months from and after the acquiring of title and after advertising such real estate at least three times in the official county paper and such other papers as the board shall direct, describing the same, giving the general location thereof, and the time and place of sale, may sell such real estate at public auction for cash in hand to the highest bidder therefor. . . ."

In section 11 of House bill No. 340, G. S. 1941 Supp. 79-2804f, as amended in 1943, was specifically repealed without any saving clause. House bill No. 340 contained a section (10) which reads:

"All tax foreclosure actions begun prior to the effective date of this act shall be completed in conformity with the laws in effect prior to the effective date of this act: *Provided,* That if in the opinion of the court the application of the provisions of this act would be feasible and would not work injustice the court may in its discretion order the completion of such proceedings in conformity with this act."

Counsel for plaintiff argue that since the real estate in question was acquired by the county in 1942 the statute then in effect (G. S. 1941 Supp. 79-2804f) granting authority to the board of county commissioners to sell such property should be followed notwithstanding the enactment in 1945 of House bill No. 340. This position cannot be sustained for two reasons: G. S. 1941 Supp. 79-2804f was repealed by House bill No. 340, effective April 1, 1945, and was not in force in May, 1945, when the county reduced its price and Mr. Simion offered to buy. Second, the authority of the county to sell the property in question is a statutory authority. (See *Felker v. Elk County,* 70 Kan. 96, 78 Pac. 167; *State, ex rel., v. Mowry,* 119 Kan. 74, 237 Pac. 1032; and *State, ex rel., v. Wyandotte County Comm'rs,* 154 Kan. 222, 117 P. 2d 591, and authorities cited therein.) The county has no vested interest in the manner of disposing of the property which the legislature could not change. In May, 1945, House bill No. 340 was in full force and effect and section 7 of that act provided the only method by which the county could sell the property in question. It is stipulated there had been no advertising of the property, as required by that section. Mandamus will not lie to require the board of county commissioners to do something which they are not authorized to do under the law.

Counsel argue the effect upon the question here for decision of section 10 of House bill No. 340. We think it clear that this section applies only to cases which had been brought before the effective date of House bill No. 340 and which were pending and not·finally disposed of at that time. Several sections of House bill No. 340 amended prior sections of the statute pertaining to what should be in the petition in such a foreclosure action, items of cost that might be considered, the distribution of funds, and other matters, which in the discretion of the trial court considering a pending case might or might not be held to apply as justice required; hence, the section has an important place in the bill. But where a foreclosure action had been fully closed before the new statute went into effect it would be practically impossible to open up a closed case so that the procedural matters referred to could be used. We are of the opinion, therefore, that it has no effect upon the question before us.

It necessarily follows that the writ prayed for cannot be granted. Writ denied.